UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK J. MALTESE,

                                        Petitioner,

-vs-

COLVIN, Superintendent Five Points,

                                        Respondent.
_____

DECISION AND ORDER

6:18-CV-6188 CJS

## INTRODUCTION

Petitioner Mark Maltese ("Maltese" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in New York State County Court, Genesee County, upon a jury verdict, of Robbery in the Second Degree (three counts), Burglary in the Third Degree, Criminal Mischief in the Second Degree and Grand Larceny in the Third Degree.  The Petition asserts that the convictions were unconstitutionally obtained for various reasons discussed further below, including that Petitioner's confession to most of the crimes was involuntary because at the time he confessed he was experiencing withdrawal from pain medications and crack cocaine.[1] For the reasons explained below, the application for a writ of habeas corpus is denied and this action is dismissed.

_____

[1] As will be discussed further below, the record actually contains no evidence that Petitioner was experiencing such withdrawal at the time.  Rather, the evidence in support of Petitioner's claim on this point shows at most that he was a user of narcotic pain medications and crack cocaine, and that he had been in custody for approximately six hours when he gave his statements.  Petitioner elected not to testify at the suppression hearing and trial.  On the other hand, there was affirmative testimony at the suppression hearing and trial from other witnesses, including one that had known Petitioner for more than twenty years, that Petitioner did not appear to be ill or experiencing withdrawal when he gave his confession.

BACKGROUND

These subject convictions flowed from a series of criminal offenses committed between March and November of 2013, in and around Batavia, New York.  The spree began on March 26, 2013 when Petitioner and Jon Bush ("Bush") stole a safe, belonging to Bush's grandmother, containing thousands of dollars; then, on November 21, 22, and 24, 2013, respectively, Petitioner committed solo armed robberies at a Best Western Hotel, 7-Eleven Convenience Store and Days Inn Hotel; and, finally, on November 27, 2013, Petitioner and another man committed a late-night burglary at a Rent-A-Center store, during which they stole a television and damaged various other property (a television, a plate-glass window and various store fixtures).  All of the crimes were committed in the City of Batavia, except for the 7-Eleven robbery which was committed in the nearby Village of Oakfield.

The events leading to Petitioner's arrest were as follows.  A witness to the last crime, the Rent-A-Center burglary, followed the burglars' car to a nearby residence and notified the police of the location, which was 4129 Colonial Boulevard in the City of Batavia, situated essentially across the highway from the Rent-A-Center.  Detective Todd Crossett ("Crossett") of the Batavia Police Department arrived at the location and, after speaking with the witness, observed two sets of footprints in the snow leading from the getaway car to the house.  Crossett had some conversation with the woman who answered the door of the residence, Lisa Harlach ("Harlach"), after which Robert Grant ("Grant") emerged from the house and admitted to committing the burglary.  Harlach then gave the officers permission to enter the house and retrieve the stolen television.  Upon entering, the officers observed Petitioner carrying the stolen television.  Officers also observed a pair of lime-green rubber gloves matching the description of gloves that had

been worn by the perpetrator of the 7-Eleven robbery five days earlier.  Harlach provided a written consent giving permission to search the house and indicating that Grant and Petitioner had left the house and returned shortly thereafter with the stolen television. Upon searching the house, officers discovered Petitioner's black and red Nike sneakers, similar in appearance and tread pattern to the sneakers worn by the 7-Eleven robber.[2] Petitioner's girlfriend subsequently gave police permission to search her apartment, where Petitioner had been staying, and police discovered, among other evidence, a coin tray that had been taken during the robbery at the Days Inn Hotel.

Coincidentally, one of the investigating officers from the Genesee County Sheriff's Office, Investigator Ronald Welker ("Welker"), was a long-time friend of Petitioner.  More specifically, Welker and Petitioner had been friends for over twenty years.  Several hours after Petitioner's arrest, he agreed to waive his *Miranda* rights and give a statement to Welker.  In that regard, the Genesee County Sheriff had a policy recommending that statements taken in cases involving certain enumerated felonies be videotaped, if practical.  However, Welker did not videotape the statement since he was already aware that Petitioner would not speak if he was being recorded.[3]  The confession, which was reduced to writing and signed by Petitioner, stated, in pertinent part:

> [M]y name is Mark J. Maltese and my date of birth is 04-09-70.  On Wednesday November 20th late night into the early morning hours of November 21st I was in my girlfriend's car, a green Toyota Camry.  I went to the area of the Best Western on the road that leads to the thruway entrance.  I was there with the intention of robbing the hotel, to get money

---

[2] Petitioner later admitted that after returning from the burglary at the Rent-A-Center he had changed his footwear and put on a pair of shoes belonging to someone else.

[3] The crimes for which Petitioner was indicted were not on the list of enumerated crimes in the policy. *See, e.g.*,Trial Tr. at p. 543 ("Mr. Friedman:  But none of the crimes that are listed in this indictment are on that list[of enumerated felonies, and] it [(videorecording)] wasn't practical in this case, based on those circumstances."); *see also*, SR 196-197 (Policy listing "specific crimes" for which interviews were to be recorded).

to buy crack cocaine.  The car was parked near the door to the Best Western.  I went inside the hotel with jeans, a black hoodie with "Army" on it, black gloves, a black knit hat, black and red Nike sneakers, and a red bandanna covering my face.  I had a silver-colored BB gun with me.  Once inside I walked up to the clerk, pulled out the BB gun and said "Gimme all your money" the clerk then said "are you kidding me?" I said "No I'm not kidding you this is a robbery."  The clerk kept asking me if I was kidding her, but I told her that I was serious.  The clerk then went into the cash drawer and handed me a bunch of money.  I then walked out of the hotel and got back in the car and left the area.  I then went back to where my girlfriend lives at 29 Dellinger Ave. and went up into the attic to figure out what I was going to do next.  I then took the money that I got from the robbery which was around $300 and went and spent the entire amount on crack cocaine, and smoked all of it that same night.

On Thursday night November 21st into the early hours of November 22nd I was in my girlfriend's car, the same green Toyota Camry.  I went to the area of the 7-Eleven store on Rt. 63 in Oakfield.  I was there with the intention of robbing the store, to get money to buy crack cocaine.  While in the car I pulled up to the stop sign that is right next to the store.  I then backed up from the stop sign and parked along side the store.  I went inside the store with jeans, a brown hoodie with some design on it, black gloves, a knit hat, black and red Nike sneakers, and a purple bandanna covering my face.  I again had the same silver colored BB gun with me.  Once inside I walked up to the clerk pulled out the BB gun and told her to give me all the money.  The clerk then gave me money out of the cash drawer which amounted to about fifty dollars.  I then walked out of the store and ran back to the car and left the area.  I then drove to the area of Rt. 5 near the Willowbend bar and threw the BB gun out the window.  I then went back to where my girlfriend lives at 29 Dellinger Ave. and went up into the attic again to figure out what I was going to do next.  I then took the money that I got from the robbery which was around $50 and went and spent the entire amount on crack cocaine, and smoked all of it that same night.

On Saturday night November 23rd into the early hours of November 24th I was in my girlfriend's car, the same green Toyota Camry.  I went to the area of the Day's Inn in Batavia near the Bob Evans Restaurant.  I was there with the intention of robbing the hotel, to get money to buy crack cocaine.  While in the car I pulled up near the hotel.  I went inside the hotel with jeans, a black hoodie with "New York" on it, black gloves, a knit Sabres hat, black

and red Nike sneakers, and a black bandanna covering my face.  I had a
Remington 870 shotgun that was not loaded with me.  Once inside the hotel
I walked up to the clerk with the shotgun in my hands and told him to give
me all the money.  The clerk then gave me money out of the cash drawer
which amounted to about two-hundred dollars along with a metal change
tray that had about six dollars and fifty cents.  I then walked out of the hotel
and ran back to the car and left the area.  I then went back to where my
girlfriend lives at 29 Dellinger Ave. and went up into the attic again to figure
out what I was going to do next.  I then took the money that I got from the
robbery which was around $299 and went and spent the entire amount on
crack cocaine, and smoked all of it that same night.

Investigator Welker showed me a pair of black and red Nike sneakers that
I identified as being my sneakers and that they were also the sneakers that
I wore in each of the three robberies described above.  Investigator Welker
also showed me the silver colored BB gun that I identified as the BB gun
that I used in the first two robberies described above.  Investigator Welker
showed me a metal tray silver in color that I identified as the change tray
that I got in the Days Inn robbery.  Investigator Welker showed me a pair of
green and blue gloves that I identified as the gloves I wore during the
robbery at the 7-Eleven in Oakfield.  All of the other clothes used in the three
robberies were destroyed.

I have been struggling with a major addiction to crack cocaine for about the
past six or eight months.  This addiction has consumed me and the majority
of my money goes to by crack to feed my addiction.  My crack use got way
out of control and I didn't know how to stop or slow down with smoking it.  I
became desperate for money so that I could get more crack cocaine, so I
turned to robbing places to get the money I needed for the crack.  Every bit
of proceeds from the three robberies went to buy crack for me to smoke.  I
was out of control with my addiction and didn't know where to turn.

ECF No. 1-1 at pp. 88–89.  This statement contained numerous details that were not

known to the public, which were corroborated by the testimony of the various robbery

victims.  Additionally, the discarded BB gun was found at the location where Petitioner

claimed to have thrown it out of his car, by a passerby who turned it over to the police.

Petitioner gave the statement to Welker over the course of an interview lasting approximately two hours, during which Petitioner was allowed to take multiple cigarette breaks.  During one such break, Petitioner remarked to Genesee County Chief Deputy Sheriff Jerry Brewster ("Brewster") that it was a good thing that Welker was the officer taking his statement, since he would not have agreed to speak to anyone else.

Regarding the grand larceny of the safe committed in March 2013, Petitioner did not provide a confession.  However, Petitioner was implicated in the crime at trial by Bush, who, after pleading guilty to burglarizing his grandmother's house, indicated that he and Petitioner had stolen the safe together and divided up the cash that was inside.[4] Additionally, a jailhouse informant, Steven Crandall ("Crandall"), testified that Petitioner had confessed to him about the safe heist and the Rent-A-Center burglary.  Further as to the burglary at Rent-A-Center, Petitioner gave an oral statement to Welker acknowledging that he had participated in the crime with Grant.  Moreover, as already noted, Petitioner was observed by police in possession of the stolen television, and Harlach provided a statement indicating that Petitioner and Grant had left the house together and then returned a few minutes later with the stolen television.

 The Genesee County Grand Jury subsequently returned a seven-count Indictment against Petitioner charging him with three counts of Robbery in the Second Degree, Penal Law ("PL") § 160.10-2(b), involving the three hotel robberies; one count of Burglary in the Third Degree, PL § 140.20, involving the Rent-A-Center burglary; one count of Criminal Mischief in the Second Degree, PL § 145.10, involving damage to

---

[4] Bush was caught after a family member saw him jumping from the roof of his grandmother's residence. After pleading guilty to the burglary, Bush told probation, as part of the pre-sentence investigation, that Petitioner had also participated in the crime, and that the two of them had divided up the cash that was in the safe.  Petitioner was later convicted of grand larceny for this theft but acquitted of burglary.

property at the Rent-A-Center; one count of Burglary in the Second Degree, PL §§ 20.00 and 140.25-2, involving the burglary at the residence from which the safe was stolen; and one count of Grand Larceny in the Third Degree, PL §§ 20.00 and 1555.35-1, involving the theft of the safe and its contents.

Petitioner's retained defense attorney, David Pilato ("Pilato"), subsequently filed pre-trial motions, including motions to suppress his arrest and oral and written statements and all evidence derived from them.[5]  Petitioner argued, for example, that his statements had not been voluntary, since he had been undergoing withdrawal from prescription medications and crack cocaine.[6]  Petitioner also requested inspection of the Grand Jury minutes and dismissal or reduction of the Indictment.

On July 11, 2014, the Honorable Robert C. Noonan ("Judge Noonan"), Genesee County Court Judge, issued a decision that, *inter alia*, denied the motion for dismissal or reduction of the charges and granted a suppression hearing.  On August 28, 2014, and September 23, 2014, Judge Noonan conducted a suppression hearing.  On October 15, 2014, Judge Noonan issued a decision denying Petitioner's motions, stating in pertinent part:

> Sheriff's Investigator Ronald Welker testified that at approximately 7:00 AM he advised defendant of the *Miranda* warnings, to which defendant responded that he understood his rights and was willing to answer the investigator's questions.  Defendant's statements with regard to the robberies were typed, at the conclusion of which defendant read and signed the statement.  An additional oral statement was then taken regarding the Rent-A-Center burglary, which Investigator Welker reduced to writing.

---

[5] Petitioner initially moved to suppress his oral statement and preclude his written statement, with the motion to preclude based on a typographical error as to the date of the statement.  However, during the suppression hearing Petitioner abandoned the preclusion argument and expanded the suppression motion to include the written statement.

[6] This motion was supported by Pilato's attorney affirmation containing hearsay assertions that Petitioner "went into a state of detoxification from the oxycodone" while he was in police custody.  SR 072.  Petitioner did not submit a supporting affidavit or testify at the suppression hearing.

Defendant did not appear to be under the influence of alcohol or drugs, did not complain of withdrawal or physical ailment and asked only for a drink [of water].  At some point, defendant was shown a pair of sneakers and a BB gun, which he identified.  At no time did defendant ask to stop the interview or to have counsel, and no threats or promises were made to him.  The interview concluded at 9:30 AM.

***

The People's CPL § 710.30 notice was timely as to both statements and defendant had sufficient notice and opportunity to challenge both at the suppression hearing.

Based upon the reported burglary, the eyewitness identification of the vehicle seen leaving the scene, and the footprints leading from that vehicle to the house on Colonial Boulevard, in closed proximity to the burglary, Detective Crossett had a founded suspicion that criminal activity was afoot sufficient to request a search of the Colonial Boulevard home, which was given voluntarily by Lisa Harlach.

That information, together with Harlach's willingness to give up the television, defendant's possession of presumably stolen property and the statement of Lisa Harlach then provided probable cause to arrest defendant.

The credible evidence also establishes beyond a reasonable doubt, under the totality of the circumstances, that defendant's statements were voluntary and that, subsequent to his arrest, defendant was fully advised of the *Miranda* warnings and voluntarily, knowingly and intelligently waived those rights prior to making the statements of November 27, 2013.

ECF No. 1-1 at pp. 143–144[7] (citations omitted).

On January 26, 2015, a jury trial commenced before Judge Noonan.  The People were represented by the Genesee County District Attorney, Lawrence Friedman ("Friedman").  Petitioner was represented by Pilato.  Evidence in the prosecution's case included Petitioner's statements, as well as testimony from various witnesses, including

---

[7] The reader is advised that the ECF page number may be different that the page number on the original document.

the clerk-victims of the armed robberies, Bush (Petitioner's accomplice in the theft of the safe) and jailhouse informant Crandall.   There was also testimony from various police officers, including Welker, who indicated that Petitioner did not appear ill or to be experiencing drug withdrawal when he gave his confession.

The defense strategy primarily was to attack the confession and the decision by the Genesee County Sheriff's Office not to videotape the interview.[8]   Petitioner elected not to testify, even though the Prosecutor had agreed not to bring up any past convictions[9] if he did testify.   Prior to the defense resting, Pilato indicated the he was considering moving to admit certified office records from Petitioner's treating physician without a foundational witness, and sought an advance ruling in that regard.   In particular, Pilato indicated he was considering using the records to show that Petitioner was addicted to prescription pain-killers, to support the inference that Petitioner had been experiencing withdrawal when he gave his confession, thereby rendering the confession involuntary. Pilato asserted that the records were admissible, "without anyone testifying," "under the Criminal Procedure Law,"[10] but Friedman stated that pursuant to CPLR § 4518(c), he did not think the records were admissible on that basis since they were not hospital records.[11] After researching the issue of "certification requirements," Judge Noonan ruled that the records were not admissible. *See*, Trial Tr. at p. 504 ("Mr. Friedman is correct, doctor's office records are not permissible with a certification under 4518(c).   So, even with the

---

[8] In that regard, the confession was particularly important to the armed robbery counts, since the robber's face had been covered during all three robberies.  Although, other evidence besides the confession linked Petitioner to the robberies, such as the green gloves worn during the 7-Eleven robbery, the discarded BB gun, the appearance and tread-pattern of Petitioner's sneakers and the metal coin tray taken during the Days Inn Hotel robbery that was found under the mattress shared by Petitioner and his girlfriend.
[9] DWI and DWAI. Sentencing Tr. at p. 4.
[10] Defense counsel admitted that he had only faxed certification pages that were not attached to the records that they were purportedly certifying.
[11] Trial Tr. at pp. 501–502.

proper certification, those are not going to be admitted.").  Pilato did not offer any other basis for admission of the records.

At the charge conference Pilato asked for an adverse-inference charge concerning Investigator Welker's failure to videotape the confession, but Judge Noonan denied that request.

While instructing the jury concerning the voluntariness requirement for confessions, Judge Noonan evidently[12] misspoke by omitting one word from the instruction, stating in pertinent part:

> [A]lso under our law, even if you find the statement – excuse me, that the defendant made a statement, you still may not consider it as evidence in the case unless the People have proven beyond a reasonable doubt that the defendant made the statement voluntarily. . . . Before you may consider as evidence a statement made by the defendant in response to questions, you must find beyond a reasonable doubt that the defendant was advised of his rights, understood those rights, and voluntarily waived those rights and agreed to speak to the police.  If you do not make those findings, then you must disregard the statement and not consider it.
> Under our law, a statement is not voluntary if it is obtained from the defendant by the use or threatened use of physical force.  In addition, a statement is not voluntary if it is obtained by means of any other improper . . . conduct[.]  . . .  If the People have not proven beyond a reasonable doubt that the defendant, that a statement of the defendant was voluntarily made, then you must disregard the statement *and consider it*. [(should have been "and *not* consider it.")] If the people have proven beyond a reasonable doubt that a statement of the defendant was voluntarily made, then you may consider that statement as evidence[.]

Trial Tr. 575–577 (emphasis added).  However, there was no objection to the court's instruction. Trial Tr. 597.

---

[12] It may also be that the transcript contains a typo on this point.  In that regard, the fact that Judge Noonan was reading from the pattern jury instructions, and that there was no objection, makes it possible that the error lies with the transcript rather than Judge Noonan's instruction.

The jury found Petitioner guilty on all counts except for Count Six of the Indictment, involving the burglary of the home from which the safe was taken.  However, the jury convicted Petitioner under Count 7, of committing grand larceny in connection with stealing the safe.  Trial Tr. 615–616.  Judge Noonan sentenced Petitioner to concurrent sentences that in the aggregate amounted to a fifteen-year prison sentenced to be followed by a five-year post-release supervision period.[13]

Petitioner filed a direct appeal and was represented on appeal by a new attorney, Bridget Field ("Field"),[14] who raised six issues:  1) the trial court erred in finding that Petitioner's statements were knowing and voluntary; 2) the police had lacked probable cause to arrest Petitioner; 3) the trial court erred in denying Petitioner's motion to preclude his written statement; 4) the convictions were not supported by legally-sufficient evidence; 5) the verdict was against the weight of evidence; and 6) the sentences were harsh and excessive.  Petitioner also submitted a supplemental *pro se* brief asserting, *inter alia*, the following arguments: The trial court gave an erroneous jury instruction; a "chief witness [("Crossett")] misstated facts"; there was prosecutorial and judicial abuse of discretion; the trial court violated "the mandatory jury note procedure"; the trial court erred in failing to give an adverse inference charge concerning the failure to videotape Petitioner's confession; Petitioner was "denied a full defense" after the court refused to admit his medical records; and the Genesee County District Attorney's Office had a conflict of interest.

---

[13] Prior to trial, Petitioner had turned down plea offer with a sentence of 10 yrs max; 12/4/14 "Plea Cutoff" Tr. at p. 2: "[T]he offer was to plead to two Class C violent felonies with concurrent sentences not to exceed ten years in prison.")
[14] The Genesee County District Attorney's Office was represented on appeal by Melissa Cianfrini ("Cianfrini").

On March 31, 2017, the New York State Supreme Court, Appellate Division Fourth

Department, denied the appeal, stating in pertinent part:

> Defendant appeals from a judgment convicting him, upon a jury verdict, of three counts of robbery in the second degree (Penal Law § 160.10 [2] [b]), and one count each of burglary in the third degree (§ 140.20), criminal mischief in the second degree (§ 145.10), and grand larceny in the third degree (§ 155.35 [1]). By making only a general motion for a trial order of dismissal, defendant failed to preserve for our review his contention in his main and *pro se* supplemental briefs that the evidence is legally insufficient to support the conviction (*see People v Hawkins*, 11 NY3d 484, 492 [2008]). Viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349 [2007]), we reject defendant's further contention that the verdict is against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). Defendant also contends in his main and *pro se* supplemental briefs that his statements to the police were not knowing and voluntary and that County Court therefore erred in refusing to suppress them because he was not given water the first time he requested it; "it was possible" that he was "complaining" from opiate withdrawal symptoms and may have appeared intoxicated; he was in custody for six hours before he was interrogated, and was questioned for 2½ hours; and he was never given any medication while in custody. We reject that contention. Here, the officer who questioned defendant testified at the suppression hearing that defendant never requested any form of medication or food, and did not complain that he was suffering from withdrawal. Furthermore, although defendant's first request for water was denied, he was thereafter provided with water and was allowed to take several cigarette breaks. Thus, we conclude that "the totality of the circumstances here does not 'bespeak such a serious disregard of defendant's rights, and [was not] so conducive to unreliable and involuntary statements, that the prosecutor has not demonstrated beyond a reasonable doubt that the defendant's will was not overborne'" (*People v Jin Cheng Lin*, 26 NY3d 701, 725 [2016]). Contrary to defendant's related contention, the fact that defendant and the officer conducting the questioning were acquaintances does not warrant a different conclusion (*see generally People v Gates*, 101 AD2d 635, 635-636 [1984]).
>
> We reject defendant's further contention in his main and *pro se* supplemental briefs that the police lacked probable cause to arrest him. "'Probable cause does not require proof sufficient to warrant a conviction

beyond a reasonable doubt but merely [requires] information sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place'" (*People v Myhand*, 120 AD3d 970, 970 [2014], *lv denied* 25 NY3d 952 [2015]). Here, a witness followed defendant's car directly from the store that was burglarized to a house, and a police officer was allowed to enter the house where defendant was seen walking up the stairs holding the stolen television. In addition, an occupant of the house provided a statement that defendant left the house with another man and came back with a television. We thus conclude that the police had probable cause to arrest defendant (*see id.*).

Defendant contends in his main brief that the court erred in admitting his written statement in evidence because the People failed to comply with the CPL 710.30 notice requirements, *i.e.*, they indicated in their CPL 710.30 notice that defendant's written statement was made on September 13, 2013, when it was actually made on November 27, 2013. We reject that contention. "'[T]he purpose of the statute will be served when the defendant is provided an opportunity to challenge the admissibility of the statement[ ]'" (*People v Simpson*, 35 AD3d 1182, 1183 [2006], *lv denied* 8 NY3d 990 [2007]). While the statement displays the date September 13, 2013 on the top lefthand corner of the first page, the dates underneath defendant's signature at the bottom of both pages of the statement indicate that it was made on November 27, 2013. We conclude that this mere clerical error did not hinder defendant from challenging the admissibility of the statement during the suppression hearing (*see id.*). We reject defendant's final contention in his main brief that the sentence is unduly harsh and severe.

By failing to object to the jury charge as given, defendant failed to preserve for our review his contention in his *pro se* supplemental brief that the jury charge was improper with respect to the issue of voluntary statements (*see generally People v Robinson*, 88 NY2d 1001, 1001-1002 [1996]). In any event, we conclude that the court's charge, viewed in its entirety, "fairly instructed the jury on the correct principles of law to be applied to the case and does not require reversal" (*People v Ladd*, 89 NY2d 893, 896 [1996]). We similarly reject defendant's contention in his *pro se* supplemental brief that the court erred in denying his request for an adverse inference charge concerning the failure of the police to record his interrogation electronically (*see People v Durant*, 26 NY3d 341, 352-353 [2015]).

Defendant's contentions in his *pro se* supplemental brief that the prosecutor should have been disqualified and that defense counsel was ineffective based on a conflict of interest concern matters outside of the record and must be raised by way of a motion pursuant to CPL article 440 (*see e.g. People v Sanford*, 138 AD3d 1435, 1436 [2016]).

We have reviewed defendant's remaining contentions in his *pro se* supplemental brief and conclude that none requires modification or reversal of the judgment.

*People v. Maltese*, 148 A.D.3d 1780, 1781–83, 50 N.Y.S.3d 770 (2017), *lv. to appeal denied*, 29 N.Y.3d 1093 (2017).

On April 21, 2017, Petitioner filed a *pro se* collateral attack pursuant to New York CPL § 440.10(1) asserting the following claims: 1) the Genesee District Attorney, Mr. Friedman, his former First Assistant, William Zickl ("W. Zickl"), and Assistant District Attorney Robert Zickl ("R. Zickl") perpetrated fraud because the Zickl brothers "were both involved in the initial prosecution" and they concealed the fact that W. Zickl's daughter was a friend of Petitioner's daughter, which was a conflict that should have disqualified the entire Genesee County District Attorney's office; 2) Judge Noonan should have been disqualified because he is the uncle of the Zickl brothers; 3) Judge Noonan should have been disqualified because he was District Attorney Friedman's former father-in-law; 4) Judge Noonan should have been disqualified because he is an imposter whose real name is Robert E. Noonan, Jr., rather than Robert C. Noonan as claimed; 5) the prosecution used jailhouse informant Crandall to violate Petitioner's right to counsel, by placing him in the same cellblock with Petitioner so that he could spy on Petitioner, and, in addition, there was a conflict since Assistant Public Defender William Tedford ("Tedford"), who represented Petitioner for approximately two months, before Petitioner was indicted, had also represented Crandall; 6) the court should appoint counsel for Petitioner, due to the

alleged conflicts of interest; and 7) Tedford should be required to file a response.  In support of his state-court collateral attack, Petitioner attached various exhibits taken from filings in federal court by a litigant named Richard Mills ("Mills"), who had unsuccessfully made similar allegations against Judge Noonan.

On October 30, 2017, the Honorable Michael Mohun ("Judge Mohun"), Genesee County Court Judge, denied Petitioner's Section 440 motion, stating in pertinent part:

Findings of Fact and Conclusions of Law

1. In his supporting affidavit, the defendant arranges his grounds for demanding the vacating of his convictions into five 'points.'  He contends that his acquaintance with a prosecutor –who did not participate in his trial— disqualified the entire Genesee County District Attorney's Officer from prosecuting the case (point one), that conflicts of interest arising from familial and other relationships required the judge to disqualify himself, and his failure to do so denied the defendant a fair trial (points two and three), that the judge was not qualified to act as a judge in the case (point four), and that his 5th Amendment and 6th Amendment rights were violated by the introduction of testimony from a jailhouse informant during the trial (point five).  He also asks for the appointment of counsel and funding to hire an expert witness (point six), and for an order compelling his former attorney to appear at a hearing upon the motion and declaring that the former attorney may be treated by the defendant at the hearing as a 'hostile witness' (point seven).

2. The defendant's motion is without merit and shall be denied without a hearing.  The affidavits submitted by the defendant in support of his motion –which by and large contain nothing but conclusory and unsubstantiated allegations—fail to raise questions of fact which would necessitate such a hearing (CPL § 440.30[4][b]; *People v. LaPella*, 185 A.D.2d 861 [2d Dept., 1992], leave to appeal denied by 81 N.Y.2d 842 [1993]; *People v. Waymon*, 65 A.D.3d 708, 709 [2nd Dept., 2009], leave to appeal denied by 13 N.Y.3d 863 [2009]).  The Court shall also deny the defendant's requests for a subpoena for his former attorney, the appointment of counsel and funding to hire an expert witness.

3. From a review of the documentation annexed as exhibits to the defendant's supporting affidavit, it is obvious that, with the exception of his point one and possibly point five, his claims are all derived from claims previously made by Richard Mills in his suit against Robert C. Noonan filed under Index Number 16-cv-984 in the Federal District Court for the Western District of New York.  All but one of the annexed affidavits bear the index number and/or caption of that case, showing that all but one were actually prepared [by Mills] for submission to the Federal District Court in connection with that case.  In seeking to have his conviction vacated, the defendant has apparently simply adopted Mr. Mills' claims as his own.  Upon examining the supporting documentation, the Court finds that it is entirely lacking in probative value –containing, as it does, little beyond conclusory allegations of wrongdoing, second-hand reports of alleged jailhouse rumors, vague allusions to an 'investigation' performed by an unnamed 'private investigator' engaged by Mr. Mills, and outlandish assertions about the judge and the prosecutors.

4. The Court notes that the Honorable Michael A. Telesca, United States District Court Judge, dismissed with prejudice Mr. Mills' suit under index number 16-cv-984 in a decision signed April 13, 2017 (*Mills v. Noonan*, 2017 WL 1353479).  In doing so, the Judge found that '[a]ll of Plaintiff's purported causes of action under federal law have been found to lack an arguable basis in law or fact.'  Mr. Mills has appealed the dismissal.[15]

5. With respect to the defendant's point one, the defendant's allegations of a personal acquaintance with a prosecutor are insufficient to establish 'actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence.' (*People v. Davis*, 150 A.D.3d 1396 [3d Dept., 2017]).  Without such a showing, the defendant's claim that the District Attorney's Office should have been disqualified cannot provide a basis for vacating the conviction. (*Id*.).

6. With respect to point two, the Court notes that the People have refuted the defendant's claims with the submission of the June 2, 2005, Decision and Order of County Court Judge Robert C. Noonan in the case of People v. Richard F. Mills (Indictment no. 4639).  Mills was convicted following a jury trial of Attempted Murder in the 1st Degree, Attempted Assault in the 1st Degree, Reckless Endangerment in the 1st Degree, Criminal Possession of

---

[15] The Court takes judicial notice of the fact that the Second Circuit dismissed the appeal, observing that the action continued Mr. Mills' "prior pattern of vexatious filings." 16-CV-0984 MAT, ECF No. 35.

Marijuana in the 3rd Degree, and two counts of Criminal Possession of a Weapon in the 3rd Degree, and the Genesee County Court sentence him to an aggregate prison term of 20 years to life on December 16, 2004.  Like the defendant in this case, Mills argued that Judge Noonan should have disqualified himself due to his familial relationship with two Assistant District Attorneys, Robert and William Zickl, who are brothers.  As Judge Noonan explained in his June 2, 2005, Decision and Order, he is, in fact, related to the Zickl brothers as first cousins once removed.  This is a fifth-degree relationship with does not require mandatory recusal pursuant to court rule § 100.3(E)(1)(e) (22 NYCRR § 100.3[E][1][e]).   That rule requires mandatory recusal only where 'the judge knows that the judge or the judge's spouse, or a person known to the judge to be within the fourth degree of relationship to either of them, or the spouse of such person, is acting as a lawyer in the proceeding or is likely to be a material witness in the proceeding.' (emphasis added).   Judge Noonan went on to find that discretionary recusal was also not required based on the relationship.  In denying Mills' motion, Judge Noonan noted that Mills' allegations of bias on the part of the Court in favor of the District Attorney and the Zickls amount to '[n]othing but unfounded castigation and speculation.'

7. With respect to point three, alleging that 'close working and family ties' existing between Judge Noonan and the District Attorney required recusal of the judge and deprived the court of jurisdiction in the case, the defendant offers several affidavits of Richard Mills in which Mr. Mills various asserts that, while in jail, he was told by his lawyer and by deputies that the District Attorney 'either married Judge Noonan's daughter or Judge Balbick's daughter,' or that he 'married a Noonan girl.'  The hearsay reports have no probative value and fail to provide any support for the defendant's claim.

8. Moreover, in his June 2, 2005, Decision and Order in Mr. Mills' case, Judge Noonan considered and rejected Mr. Mills' contention that his ties to the District Attorney required recusal.  Therefore, the June 2, 2005, decision also refutes defendant's attempt to re-assert Mills' claim under his point three.

9. The source for the outlandish allegations made under the defendant's point four is, once again, Richard Mills.  In his affidavits, Mills alludes vaguely to an 'investigation' conducted by a 'private investigator' based on which 'it is now believed, upon investigation, documentation, and information and belief, that former Judge Robert C. Noonan, reported in the

NY legal pages of 2016, as born on August 6, 1947, does not even exist.' He goes on to declare that '[t]here is no Robert C. Noonan born in Batavia in 1947,' and that the name Robert C. Noonan is a 'fake name' adopted by Judge Noonan in order to 'deceive everyone.'  Mills then invents a fanciful alternate biography for Judge Noonan.  This excursion into fantasy allows him to re-arrange the family trees of the Zickl and Noonan families in order to place Judge Noonan within the third degree of kinship with the Zickl brothers, rather than the fifth degree.  In this manner, he finds a way to reassert his allegation that Judge Noonan was subject to mandatory disqualification in his case, and the defendant, based on Mills' allegations, re-asserts the same claim in his case, also.  As a reiteration of the degree-of-kinship argument made under defendant's point two, point four is likewise refuted by Judge Noonan's Decision and Order of June 2, 2005.

10. In point five, the defendant claims that law enforcement officials placed an individual, who would subsequently testify against the defendant at his trial, into the defendant's jail cell block in a scheme to obtain from the defendant incriminating statements in violation of his right to counsel and his right to remain silent.  The defendant's submissions fail to substantiate this allegation, however.  Furthermore, given that the witness's testimony is a matter of record, nothing prevented the defendant from raising this claim in his direct appeal, and yet it appears that he unjustifiably neglected to do so (*see People v. Maltese*, 148 A.D.3d 1780 [4th Dept., 2017]).  In addition, to the extent that the submitted affidavits – which primarily describe overheard statements attributed to the witness, as well as various jailhouse rumors involving him—may arguably be said to provide colorable factual basis for the claim, it is evident that the defendant could, with due diligence, have made that factual basis appear in the record so as to have allowed adequate review of the issues in his direct appeal.  He did not do so, and therefore the Court determines that the claim shall be denied pursuant to CPL § 440.10(2)(c), or in the alternative pursuant to CPL § 440.10(3)(a).

11. Having determined that the defendant's substantive claims do not merit a hearing, the Court shall also deny as moot his requests for the appointment of counsel, for an order providing him with funds to engage an expert, and for the issuance of a subpoena requiring his former counsel to appear and testify at a hearing.

ECF No. 1-1 at pp. 12–16. Petitioner attempted to appeal Judge Mohun's decision, but on February 7, 2018, the Appellate Division Fourth Department denied his request for leave to appeal. SR 502.

On March 5, 2018, Petitioner filed the subject habeas petition, purporting to assert eleven separate grounds. In "Ground One," Petitioner alleges that the trial court erred in finding that his confession was involuntary and gave an incorrect jury instruction on voluntariness of confessions. In support of this claim Petitioner basically argues that, because it is undisputed that he had regularly used narcotic painkillers and abused crack cocaine and had been in police custody for several hours prior to giving his statement, he must have been experiencing withdrawal when he gave the confession, notwithstanding all testimony to the contrary. Besides that, he asserts that his friendship with Welker somehow created a conflict and rendered his confession non-voluntary. In that regard, Petitioner alleges that Welker was not really qualified to perform such an interview, suggesting that Welker was assigned to that role only so that he could take advantage of his friendship with Petitioner. Further, Petitioner alleges that Welker's failure to record the interview rendered his confession involuntary. Petitioner additionally contends that he invoked his Fifth Amendment right to remain silent when, during a cigarette break, he remarked to Chief Deputy Brewster that it was a good thing Brewster had assigned Welker to interview Petitioner since Petitioner would not have agreed to talk with anyone else. Petitioner also contends that Judge Noonan gave an incorrect jury instruction on voluntariness by omitting the word "not" from the phrase, "if the People have not proven beyond a reasonable doubt that a statement of the defendant was voluntarily made, then you must disregard the statement and not consider it." Finally, Petitioner alleges that

Pilato provided ineffective assistance of counsel by, for example, failing to object to the jury instruction on voluntariness.

Ground Two alleges that the police lacked probable cause to arrest Petitioner. In support of that claim, Petitioner contends that Detective Crossett really had no good reason to think that Petitioner had been involved in the burglary at the Rent-A-Center, and that Crossett testified falsely concerning the events leading up to the arrest. Petitioner further contends that Pilato provided ineffective assistance of counsel by failing to make a more thorough motion to dismiss based on lack of probable cause.

Ground Three alleges that Judge Noonan "violated the mandatory jury note procedures" by reading and addressing various notes from the jury in Petitioner's absence. In support of this claim, Petitioner contends that his "presence in the court room during the final day of the trial is vague, questionable and incomplete at best," since the transcript does not always affirmatively indicate that he was present at various points. Petitioner also objects to the fact that the transcript does not expressly recite all of the testimony that was read back to the jury at its request.

Ground Four alleges that Petitioner's convictions were not supported by legally sufficient evidence. In support of this claim, Petitioner argues that no fingerprint evidence or DNA evidence was introduced, and that the descriptions given of the robber by some of the victims did not match his appearance. Petitioner further contends that Pilato provided ineffective assistance of counsel by failing to move for dismissal of the charges based on a lack of "forensic evidence" and  inconsistencies in the descriptions provided by the robbery victims.

Ground Five alleges that Petitioner's convictions were not supported by legally sufficient evidence since the jury instruction on voluntariness was inaccurate (resulting in

a "directed verdict" of guilt); the police interview was not recorded; Judge Noonan declined to give an "adverse inference" instruction based on the failure to record the interview; and Judge Noonan "violated Petitioner's right to present a defense" by ruling that Petitioner's medical records (which would have shown that Petitioner was a long-time user of opiate pain medication)[16] were inadmissible.

Ground Six alleges that Assistant District Attorney William Zickl and District Attorney Friedman "perpetrated a fraud" by hiding a conflict of interest that should have disqualified the entire Genesee County District Attorney's Office, since Zickl's daughter was a friend of Petitioner's daughter and Zickl's wife was a friend of Petitioner's ex-wife, and Zickl was involved in Petitioner's prosecution, despite him and Friedman claiming otherwise.

Ground Seven alleges that Judge Noonan should have been disqualified from sitting as judge on Petitioner's case since he is the uncle of Assistant District Attorneys William Zickl and Robert Zickl.

Ground Eight alleges that Judge Noonan should have been disqualified from sitting as judge on Petitioner's case since he is father-in-law or ex-father-in-law to District Attorney Friedman.

Ground Nine alleges that Judge Noonan should have been disqualified from sitting as judge on Petitioner's case since he is an impostor whose name is really Robert E. Noonan, Jr., and not Robert C. Noonan as he claims.

Ground Ten alleges prosecutorial misconduct, in which Friedman used jailhouse-snitch Crandall to spy on Petitioner while in jail, thereby denying Petitioner his right to

---

[16] The Court observes that there was no dispute that Petitioner was a user of narcotic pain medication. Indeed, Welker testified to that fact, but also testified that Petitioner showed no signs of illness or withdrawal while making his statements.

counsel.   Petitioner further contends that this plot involved Assistant Genesee County Public Defender William Tedford, who had represented both Petitioner and Crandall prior to Petitioner retaining Pilato, as well as Judge Noonan.   Petitioner also alleges that Pilato provided ineffective assistance of counsel, since, although he was aware of Friedman's plot and had spoken directly to Crandall about it, he told Petitioner he would have been disqualified from representing Petitioner "under the advocate witness rule" if he had raised the issue at trial.[17]

Finally, Ground Eleven alleges that Judge Mohun, who presided over and denied Petitioner's Section 440.10 Motion, should have been disqualified for various reasons, namely: Mohun had been the "mentor" of another judge who had recused himself from hearing Petitioner's motion; Mohun's law clerk was William Zickl; Mohun, as an attorney, had previously represented Crandall and was a "close friend" of Crandall; and Mohun had previously been an advisor to the Genesee County Sheriff's Department Drug Task Force.

Respondent opposes the Petition for reasons that will be discussed further below, including that the claims are unexhausted, procedurally barred and/or lacking in merit.

---

[17] *See, e.g.,* Pet. at p. 43 ("Mr. Pilato had no choice, he had to remain silent and he knew what they were doing to him and his client.  . . .  Friedman and Noonan had this attorney right where they wanted him, if he raised this he would be off the case.  Thus in trial counsel [(Pilato)] could not cross-examine or 'confront' Steve Crandall without fear he would be immediately disqualified, or end up in a mistrial or place his client in a very difficult counsel position midtrial.  Mr. Maltese questioned counsel on why he would not confront Steven Crandall and counsel said, "I can't," advocate witness rule.").

DISCUSSION

Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

The Application for Appointment of Counsel is Denied

Petitioner has moved for appointment of counsel. (ECF No. 7).  Prisoners have no constitutional right to counsel when bringing collateral attacks upon their convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). However, the Court may appoint counsel in the interests of justice to any person seeking relief pursuant to 28 U.S.C. § 2254 who is financially unable to obtain representation. 28 U.S.C. § 2254(h). The Court considers several factors in determining whether to assign counsel, including whether the indigent's claims seem likely to be of substance; whether the indigent is able to investigate the facts concerning his claim; whether the legal issues are complex; and whether there are special reasons why the appointment of counsel would be more likely to lead to a just determination. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co. Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

Having considered the relevant factors, the Court finds that appointment of counsel is not warranted here since Petitioner has adequately presented the claims himself, and, indeed, has in his past state-court proceedings insisted upon submitting supplemental *pro se* briefs even when he has been provided assigned counsel.    Additionally, for

reasons discussed below the claims lack merit and would not be likely to succeed even if

counsel were appointed.   The application for appointment of counsel is therefore denied.

<u>The Discovery Requests are Denied</u>

While the habeas petition was pending, Petitioner filed several discovery-related

motions and requests. *See, e.g.*, ECF No. 28 (motion for miscellaneous relief); ECF No.

29 (proposed interrogatories and other document requests); ECF No. 33 (motion for

discovery).

> Habeas petitioners are "not entitled to discovery as a matter of ordinary
> course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), but rather, may be
> granted discovery in the exercise of judicial discretion and "for good cause
> shown," see Rule 6(a) of the Rules Governing Section 2254 Cases in the
> United States District Courts. Courts routinely deny discovery when the
> requested documents "would not corroborate Petitioner's arguments." *See
> Wynn v. Lee*, 11-CV-3650 (VSB) (SDA), 2020 WL 2489733, at *7 (S.D.N.Y.
> May 13, 2020); *see also Hirschfeld v. Comm'r of the Div. of Parole*, 215
> F.R.D. 464, 465 (S.D.N.Y. 2003).

*Weston v. Capra*, No. 18CIV05770PMHJCM, 2022 WL 1811161, at *17 (S.D.N.Y. Apr.

13, 2022).

> Good cause exists "where specific allegations before the court show reason
> to believe that the petitioner may, if the facts are fully developed, be able to
> demonstrate that he is entitled to relief." *Bracy*, 520 U.S. at 908-09
> (alteration omitted) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "A
> petitioner bears a heavy burden in establishing a right to discovery," and
> "[g]eneralized statements are not sufficient to establish the requisite 'good
> cause.'" *Edward v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348,
> 364 (E.D.N.Y. 2013).

*Brown v. Sheehan*, No. 17-CV-213-LJV-HKS, 2021 WL 6113947, at *4 (W.D.N.Y. Dec.

27, 2021).   Here, Petitioner has not made the required showing.   As discussed further

below, Petitioner's theories lack any merit, and the Court fails to see how the requested

discovery might corroborate Petitioner's claims or alter the outcome of this action.

Consequently, the discovery-related applications, whether docketed specifically as such (ECF Nos. 28, 29, 33) or contained in letters, are denied.

<u>Evidentiary Hearing Not Required</u>

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

<u>Section 2254 Principles</u>

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id.* (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). As just mentioned, regarding claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).
>
> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.
>
> A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

"A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas

petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims.  Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311-312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).  Habeas petitions may not simply repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

> The Claims Alleging Conflicts of Interest Involving Judge Noonan,
> Judge Mohun, Friedman and the Zickl Brothers Lack Merit

As discussed earlier, Petitioner devotes a large amount of his Petition to claims of conflict involving Judge Noonan, Judge Mohun, District Attorney Friedman, and Assistant District Attorneys William Zickl and Robert Zickl.  (Grounds Six, Seven, Eight, Nine and Eleven.)  In support of these claims, Petitioner asserts that William Zickl's daughter was a friend of his  daughter; that Judge Noonan is the uncle of the Zickl brothers; that Judge Noonan is or was Friedman's father-in-law; that Judge Noonan is an imposter using a fictitious name; and that Judge Mohun should have been disqualified since he employed William Zickl as his law clerk and had previously represented jailhouse-informant Crandall.

Respondent maintains that the claims are "partly non-cognizable and wholly meritless." More specifically, Respondent contends that the state courts' factual findings refuting the allegations of conflict involving Judge Noonan, Friedman and the Zickls are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) and are not contrary to clearly-established federal law. Respondent further maintains that the claim involving Judge Mohun is not cognizable in a § 2254 proceeding, and also lacks merit.

The Court agrees with Respondent. At the outset, the Court notes that the claim against Judge Mohun (Ground Eleven) is unexhausted. In that regard, Petitioner previously raised the claims involving Judge Noonan, Friedman and the Zickls in his direct appeal and/or § 440.10 motion. However, Petitioner's allegations involving Judge Mohun were previously raised only in his application for leave to appeal from the denial of his § 440.10 motion, which was summarily denied on the ground that it raised "no question of law or fact which ought to [have been] reviewed," which means that Ground Eleven is unexhausted.[18] Nevertheless, the Court may deny an unexhausted claim on its merits.[19] Moreover, the Court agrees with Respondent that the claim involving Judge Mohun, consisting of alleged error in post-conviction proceeding, is simply not cognizable in this action. *See, Word v. Lord*, 648 F.3d 129, 131–32 (2d Cir. 2011) ("As the Supreme Court has recognized, the Constitution does not compel states to provide post-conviction proceedings for relief. A majority of our sister Circuits have accordingly concluded that

---

[18] *See, Andujar v. Kickbush*, No. 918CV0521GLSDEP, 2019 WL 2746599, at *5 (N.D.N.Y. June 10, 2019) ("Unfortunately for petitioner, it is well-established that presentment of a claim for the first time on an application for discretionary review, such as in a motion for leave to appeal to the New York Court of Appeals, is insufficient to exhaust the claim unless discretionary review is granted and the claim is addressed on the merits. Here, petitioner's application for leave to appeal to the New York Court of Appeals was denied and, thus, his claim was not addressed on the merits.") (collecting cases, citations omitted), report and recommendation adopted, No. 918CV521GLSDEP, 2019 WL 2743574 (N.D.N.Y. July 1, 2019).
[19] *See*, 28 U.S.C. § 2254(b)(2) ("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State.").

errors in state post-conviction proceedings do not provide a basis for redress under §
2254.  We agree, and hold that alleged errors in a postconviction proceeding are not
grounds for § 2254 review because federal law does not require states to provide a post-
conviction mechanism for seeking relief.") (citations omitted).  Moreover, even if the claim
was cognizable, Petitioner's assertions concerning Judge Mohun amount to nothing more
than a series of mostly-irrelevant, unsubstantiated hearsay allegations that do not
plausibly call the Judge's impartiality into question.  Accordingly, Ground Eleven is
denied.

        The Court further agrees that the claims in Grounds Six-through-Nine lack merit.
With regard to Ground Six, Petitioner's contention that the entire Genesee County District
Attorney's Office should have been disqualified simply because William Zickl's daughter
knew Petitioner's daughter, and Zickl's wife knew Petitioner's ex-wife, is legally meritless.
In that regard, Judge Mohun ruled that "the defendant's allegations of a personal
acquaintance with a prosecutor are insufficient to establish actual prejudice arising from
a demonstrated conflict of interest or a substantial risk of an abuse of confidence," *citing
People v. Davis*, 150 A.D.3d 1396 (3d Dept. 2017).  Petitioner has not shown that this
ruling was contrary to clearly-established federal law.

        Grounds Seven-through-Nine fare no better, and, indeed, deserve little discussion
since they are merely meritless, regurgitated conspiracy theories, popular among
defendants who were convicted of crimes in Genesee County, that have already been
thoroughly debunked by other courts.  To be clear, Petitioner has no personal knowledge
about any of the matters alleged in these claims.  Rather, he relies primarily on bits of
hearsay information cobbled together from internet searches and FOIA requests and,
above all, on prior court filings by Richard Franklin Mills, DIN No. 02-B-0778, currently

serving a sentence of twenty-to-life in the custody of the New York Department of Corrections and Community Service ("DOCCS") after being convicted, before Judge Noonan, of Attempted Murder in the First Degree, Attempted Assault in the First Degree, Reckless Endangerment in the First Degree and Criminal Possession of a Weapon in the Third Degree. *See, People v. Mills*, 28 A.D.3d 1156, 813 N.Y.S.2d 592 (4th Dept. 2006). Evidently, it was Mills who pioneered the conspiracy theories upon which Petitioner relies, such as the idea that Judge Robert C. Noonan is an impostor, actually named Robert E. Noonan, Jr., who therefore had no authority to hold office.

Copying the filings of Mills, however, is a poor litigation strategy since Mills' lawsuits, containing the same allegations, have consistently been dismissed by this Court as meritless, to the point that there are now *pro se* "filing bans" against Mills resulting from his pattern of vexatious filings. *See, e.g., In re Mills*, 2019 WL 2361488 (W.D.N.Y. Jun. 4, 2019) ("Respondent has failed to provide sufficient justification for continued filing of vexatious and frivolous documents and pleadings.  . . .  Respondent recently deluged the Court with identical 229-page combined motions to vacate and to amend the petition or complaint in three of his closed cases, along with six volumes of exhibits, some of which had to be filed manually because they are so voluminous. *E.g.*, Docket Nos. 24-27, 29, & 31 in *Mills v. Noonan, et al.*, 1:16-cv-00984(MAT) (W.D.N.Y.). *These motions reprise the same claims of conspiracy, corruption and nepotism in Genesee County that this Court has repeatedly determined lack any arguable basis in law or fact*. In addition, Respondent now accuses the undersigned and "other senior judges of this court" of being disqualified under 28 U.S.C. § 455; of committing mail fraud, wire fraud, and perjury; of "covering up" the conspiracy.  [Consequently,] no lesser sanction than an anti-filing injunction will be sufficient to deter Respondent from *abusing the Court system in order*

*to pursue his deluded vendetta against the trial judge who convicted and sentenced him.*

Therefore, Respondent is permanently enjoining from filing any document or pleading of any kind *pro se* in the Western District of New York without leave of the Chief Judge or the Chief Judge's designee.") (Telesca, J.) (emphasis added); *see also*, *Mills v. Western District of New York*, 2019 WL 4733528 (2d Cir. Jul. 29, 2019) ("In 2018, this Court entered a leave-to-file sanction against Petitioner. *See Mills v. Poole*, 2d Cir. 17-1588, doc. 77. Petitioner now moves for leave to file this appeal. Upon due consideration, it is hereby ORDERED that the motion is DENIED because the appeal does not depart from Petitioner's "prior pattern of vexatious filings." *See In re Martin-Trigona*, 9 F.3d 226, 229 (2d Cir. 1993).").

In sum, for the reasons just discussed Petitioner's Grounds Six, Seven, Eight, Nine and Eleven are denied.

## The Claims Relating to the Voluntariness of the Confession Lack Merit

In Ground One Petitioner alleges that the trial court erred in denying his motion to suppress his statements made to Welker, since the statements were involuntarily made. As already mentioned, Petitioner offers several reasons for why he believes the statements were involuntary, including that he was experiencing withdrawal from drugs, the interview was not taped, he invoked his Fifth Amendment right to remain silent, and Welker was conflicted from taking the statement since he and Petitioner were friends.  In support of his factual contention that he was experiencing drug withdrawal at the time he gave his statements, Petitioner essentially argues by inference that since he was a user of narcotic pain medications and crack cocaine and had been in custody for approximately six hours when he gave his statements, he necessarily must have been experiencing withdrawal sufficient to make his statement involuntary.     Petitioner further contends

that Judge Noonan incorrectly instructed the jury as to voluntariness, and that such error affected the sufficiency of the evidence supporting the convictions.

Respondent maintains that the Appellate Division properly affirmed the denial of Petitioner's suppression motion, and that the claim involving the jury instruction is both procedurally barred and lacking in merit.   The Court agrees with Respondent on both points.

Beginning with the alleged error concerning the voluntariness of Petitioner's statements, the relevant legal principles are as follows:

> As the claim now before this court has . . . been rejected on the merits by the state court, this court can only grant the Petition if the state court's determination was contrary to clearly established federal law or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).  . . . A confession is not voluntary when "the defendant's will was overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). To determine whether a statement is voluntary, therefore, the court must look at the totality of circumstances under which the confession was made. *See Arizona v. Fulminante*, 499 U.S. 279, 285–86, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *see also Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (stating that the test for whether a confession is voluntary or coerced under the Due Process Clause considers the totality of the circumstances surrounding the confession, including both the characteristics of the accused and the details of the interrogation).
>
> In reviewing a challenge to the voluntariness of a confession on a federal petition for a writ of habeas corpus, "the ultimate issue of 'voluntariness' [of a confession] is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Thus, the state court's finding of voluntariness is not presumed correct under section 2254. However, subsidiary factual questions, including whether the police engaged in the actions alleged by the criminal defendant, are entitled to the presumption of correctness found in section 2254(d). *Id*. at 112, 106 S.Ct. 445. Thus, such factual determinations by the trial court are presumed correct unless the petitioner

rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

*Holliday v. Weir*, No. 3:17-CV-1125 (JCH), 2018 WL 264847, at *6 (D. Conn. Jan. 2, 2018), *appeal dismissed*, 2018 WL 7021867 (2d Cir. May 30, 2018); *see also, Alexandre v. Senkowski*, 126 F. App'x 7, 12 (2d Cir. 2005) ("State court determinations of subsidiary factual questions underlying the question of voluntariness in this context are subject to the presumption of correctness set forth in 28 U.S.C. § 2254(e)(1), and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence," 28 U.S.C. § 2254(e)(1).").

Petitioner here has not rebutted by clear and convincing evidence the presumption of correctness that must be given to the state courts' factual determinations concerning the circumstances under which he gave the statements.  The Court therefore assumes, as part of this analysis, that at approximately 1:30 AM, on November 27, 2013, when Petitioner was taken to the Genesee County Sheriff's Office, he displayed no pain or impairment and asked only for a drink of water, which he was eventually given;[20] that at approximately 7:00 AM, when Welker met with Petitioner, Petitioner did not appear to be ill or under the influence of alcohol or drugs; that Welker properly administered the *Miranda* warnings to Petitioner; that Petitioner indicated that he understood his rights and was willing to waive them and speak to Welker;  that at no time did Petitioner ask to stop the interview or to have counsel; that no threats or promises were made to Petitioner; that during the interview, which lasted approximately two hours, Petitioner was allowed to take several cigarette breaks; and that Welker reduced Petitioner's statements to writing, after

---

[20] At most, Petitioner has indicated that he was not immediately given water the first time he asked for it, but that he was given it after asking a second time.

which Petitioner signed the statements.  Under these facts, the state courts' findings of voluntariness are not contrary to clearly established federal law.

Petitioner, though, contends that as a matter of law his confession was rendered involuntary because it was taken by his friend, Welker, and because it was not recorded. Petitioner further argues that he invoked his right to remain silent when he told Chief Deputy Brewster that it was a good thing that Brewster was doing the interview, since he would not have agreed to talk with anyone else.  However, the state courts rejected those arguments, and Petitioner has not shown that such rulings were contrary to clearly established federal law.

For example, even assuming *arguendo* that Welker was selected to interview Petitioner because of their past friendship, that fact does not render the confession involuntary since there is no indication that Welker misused that relationship to pressure or mislead Petitioner. *See, United States v. Anderson*, 929 F.2d 96, 100 (2d Cir. 1991) ("Although '[p]loys to mislead a suspect or to lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns," *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990), the Supreme Court has found that affirmative misrepresentations by the police may be sufficiently coercive to invalidate a suspect's waiver of the Fifth Amendment privilege.") (collecting cases); *compare, Spano v. New York*, 360 U.S. 315, 322–23, 79 S.Ct. 1202, 1206–07, 3 L.Ed.2d 1265 (1959) (misrepresentation by suspect's friend that friend would lose his job as a police officer if the suspect failed to cooperate rendered his statement involuntary); *United States v. Douglas*, 688 F. App'x 658, 664 (11th Cir. 2017) ("The district court did not err in finding that Officer Martinez did not employ an impermissible "two-step" interrogation tactic here. At the suppression hearing, Officer Martinez stated

that, at no time during the traffic stop did he "purposely and intentionally plan to get an admission" from Douglas, nor did he purposely and intentionally withhold *Miranda* warnings. Officer Martinez also denied advising Douglas of his *Miranda* rights because he got admissions and then wanted to "reinforce those admissions" with further questions. Instead, the record evidence demonstrated that Officer Martinez first spoke to Douglas as a friend or acquaintance, giving him a "scolding" about having drugs and a firearm. Officer Martinez then transitioned to an officer-suspect relationship by telling Douglas, "[w]e're gonna do everything official anyways, ok?" and reading Douglas his *Miranda* rights.").

Petitioner is also incorrect insofar as he maintains that the failure to videotape his confession required that the confession be suppressed. *See, United States v. Osbourne*, No. 14-CR-6136 (FPG), 2016 WL 9274461, at *4 (W.D.N.Y. Oct. 5, 2016) ("Lastly, Osbourne argues that the statements he made on June 26, 2014, must be suppressed because the interrogation was not recorded.   Though Special Agent Smith and Investigator Pearce acknowledged that the DBA and RPD, respectively, have policies requiring the audio– and videotaping of interrogations, their failure to comply with those policies does not, under current well-established caselaw, require the Court to grant defendant's motion to suppress.") (collecting federal cases), report and recommendation adopted, No. 14-CR-6136-FPG, 2017 WL 2880352 (W.D.N.Y. July 6, 2017).  Moreover, Petitioner is mistaken in asserting that the Genesee County Sheriff's policies *required* that his interview be videotaped, particularly where videotaping was not practical since Welker knew that Petitioner was unwilling to be recorded.

Finally, Petitioner's contention that Welker continued the interview after he asserted his right to remain silent is baseless.  After Petitioner was advised of his *Miranda* rights, he waived them and agreed to speak with Welker.   Petitioner never subsequently told Welker, or any other officer, that he wanted to stop the interview.  Rather, he merely commented to Chief Deputy Brewster, during a cigarette break, that it was a good thing Welker was taking his statement, since he would not have agreed to talk with any other officer.  As the state courts found, such comment was not an unambiguous invocation of the right to remain silent.  *See, e.g., United States v. Whitaker*, 827 F. App'x 39, 43 (2d Cir. 2020) ("Where, as here, an individual in police custody has been given his *Miranda* warnings, has indicated that he understands he has a right to remain silent, and has not unambiguously invoked such a right, the individual waives his right to remain silent by knowingly and voluntarily making a statement to police. *See Berghuis v. Thompkins*, 560 U.S. 370, 385-86, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010).").

<u>The Claim that Police Lacked Probable Cause to Arrest Must Be Denied</u>

Petitioner next contends that the police lacked probable cause to arrest him on the night of the Rent-A-Center burglary.  In that regard, Petitioner offers various reasons why he believes probable cause was lacking and that his suppression motions should have been granted, such as that Detective Crosset testified falsely during the suppression hearing and that the defense was denied discovery (photographs taken by the civilian witness to the Rent-A-Center burglary) that would have refuted aspects of Crossett's testimony.  Petitioner acknowledges that attorney Pilato had the opportunity to litigate the discovery issue and to cross-examine Crossett about the alleged inconsistencies in his testimony.  Indeed, Petitioner admits that the suppression hearing was adjourned to allow Pilato to review certain discovery before continuing his examination of Crossett, and that

to the extent Pilato requested other additional discovery in connection with the suppression hearing, Judge Noonan denied the request.   Nevertheless, Petitioner contends that Judge Noonan's adverse ruling in that regard amounts to a "*Brady* violation."

Respondent, meanwhile, indicates that Petitioner's "probable cause" claim is barred from review in this proceeding pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), since Petitioner had a full and fair opportunity to litigate the issue in state court. *See, Chavis v. Henderson*, 638 F.2d 534, 538 (2d Cir. 1980) ("Appellee's alternate argument, that his arrest was without probable cause and that therefore the identification evidence should have been excluded, was properly rejected by the district court. Appellee made no showing in the district court that he had been precluded from a full and fair opportunity to litigate this issue in the state courts. *Under Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), he may not urge the same grounds for federal habeas corpus relief.").

The Court agrees with Respondent.   The applicable law to which Respondent refers is well settled:

> "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482, (1976); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991); *Canteen v. Smith*, 555 F. Supp. 2d 407, 416 (S.D.N.Y. 2008). Therefore, in order to grant the petition, the petitioner must show that he was not given a full and fair opportunity to litigate because the state failed to provide "corrective procedures" by which his claim could be adjudicated, or that he was unable to avail himself of the state's procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  If a state "provides no procedure for defendants to redress Fourth Amendment

violations, federal habeas corpus remains available." *Shaw v. Scully*, 654 F. Supp. 859, 863 (S.D.N.Y. 1987). But, if "the state by enacting a statutory mechanism for the suppression of evidence obtained by unlawful search and seizure, has provided an opportunity fully and fairly to litigate Fourth Amendment issues, the federal courts may not reexamine those issues on habeas corpus review." *Id*. (citing *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983)). New York "provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial" through a suppression hearing under N.Y. Crim. Proc. Law § 710.30. *Shaw*, 654 F. Supp. at 864. Therefore, [the defendant] must allege that there was an "unconscionable breakdown" in the underlying process.

*Cepeda v. Morton*, No. 19 CV 2444 (JGK), 2020 WL 6382052, at *4 (S.D.N.Y. Oct. 30, 2020) (footnotes omitted), appeal dismissed, No. 20-3873, 2021 WL 1964767 (2d Cir. May 13, 2021).

When applying this standard, it is generally *not* the function of this Court to review the rulings by the state courts involving the suppression hearing, even if this Court would have decided those issues differently. *See, Capellan v. Riley*, 975 F.2d at 71 ("[T]his Court has interpreted *Powell* as requiring only that the state courts provide an *opportunity* for full and fair litigation of a fourth amendment claim, unless, of course, the petitioner can demonstrate that the state failed to provide a corrective process, or can point to an "unconscionable breakdown" in that corrective process.  Even if Capellan were correct in his allegation that the Appellate Division erroneously decided this issue, a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result.") (emphasis in original, citations and footnote omitted); *see also, id*. at 72 ("To reiterate, to the extent that Capellan claims that the Appellate Division erred in its ruling in light of *Olson*, this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is

not the equivalent of an unconscionable breakdown in the state's corrective process.").
Rather,

> [a]n unconscionable breakdown in the underlying process occurs when "the
> totality of state procedures allegedly did not provide rational conditions for
> inquiry into federal law." [*Capellan*, 975 F.2d] at 70. Habeas review is
> precluded where the state proceedings had "a corrective appellate or
> collateral procedure that fairly determined that constitutional violations did
> not occur." *Id*. Examples of unconscionable breakdowns in the underlying
> procedure include, but are not limited to, "the bribing of a trial judge, the
> government's knowing use of perjured testimony, or the use of torture to
> extract a guilty plea, all without opportunity to obtain state review." *Cappiello
> v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852 F.2d 59 (2d
> Cir. 1988) (per curiam).

*Cepeda v. Morton*, 2020 WL 6382052, at *5.

In the instant case, Petitioner disagrees with the state-court rulings made in
connection with his suppression motion, but he had a full and fair opportunity to litigate
all of the same issues that he is now raising.   The trial court and the appellate court
considered and denied Petitioner's arguments, and he has not shown that there was an
unconscionable breakdown in the state's corrective process.[21]  Consequently, this aspect
of Petitioner's claim is denied.

---

[21] To the extent Petitioner asserts ineffective-assistance-of-counsel claims they are unexhausted and
meritless, and would not, in any event, establish an "unconscionable breakdown." *See, Hayes v. Lee*, No.
11-CV-1365 KMK PED, 2015 WL 5943677, at *37 (S.D.N.Y. Oct. 13, 2015) ("[A]ny attempt by Petitioner's
to "link" his Fourth Amendment claim to an unconscionable breakdown by arguing that counsel was
ineffective for failing to discredit Gorr as a witness is unavailing. "[A]s a matter of law." "[i]neffective
assistance of counsel does not constitute an unconscionable breakdown for the purposes of *Stone v.
Powell*.") (collecting cases).

<u>The "Mandatory Jury Note Procedures" Claim is Denied</u>

Petitioner next maintains that Judge Noonan ignored "mandatory jury note procedures," which violated his rights under the Fifth, Sixth and Fourteenth Amendments. More specifically, Petitioner indicates that the transcript of the last day of trial does not expressly indicate that he was present in the courtroom, such as during closing arguments and during Judge Noonan's instructions to the jury.   Petitioner also alleges that Judge Noonan violated "jury note mandates" with regard to court exhibits 13 and 14, which are, respectively, a jury note asking to have a read-back of the testimony of witness Kimberly Blue (the hotel clerk who was robbed at the Best Western Hotel), and a jury note indicating that a juror needed to call her husband.   In connection with these notes, Petitioner alleges that the following errors occurred: 1) the court did not give counsel an opportunity to suggest appropriate responses to the notes; 2) the court did not specifically indicate "what portions" of Kimberly Blue's testimony were to be read back; 3) the court brought the jury back into the courtroom without announcing "jury in"; 4) the juror who asked to call her husband was allowed to do so, even though the record does not indicate who authorized the call or what the purpose of the call was; 5) the trial transcript does not indicate exactly who was present when the jury notes were being addressed; and 6) Petitioner was not present in court when the jury notes were being addressed by the court, and, instead, was in a holding cell while "his counsel was running back and forth telling the client what was occurring in the courtroom."

Respondent maintains that the claim is unexhausted and procedurally defaulted, and, alternatively, meritless.   Respondent contends that the claim is unexhausted since although Petitioner raised a jury-instruction claim in his direct appeal, he based it upon New York Criminal Procedure Law § 310.30, not federal law.   Respondent admits, though,

that Petitioner's supplemental *pro se* appeal brief referenced, but did not discuss, the

Fifth, Sixth and Fourteenth Amendments.   Respondent nevertheless maintains that the

claim is unexhausted and now procedurally defaulted, since Petitioner can no longer raise

the claim in state court, and that no exception to the procedural default rule applies.

Respondent alternatively contends that the claim lacks merit, since the state courts'

handling of the jury notes claim was not contrary to clearly established federal law.

> The Court will first consider whether Petitioner properly exhausted this claim, and

in that regard the law is clear:

> It is beyond argument "that a state prisoner must normally exhaust available
> state judicial remedies before a federal court will entertain his petition for
> habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512,
> 30 L.Ed.2d 438 (1971). This requirement is a matter of federal-state comity
> and is codified in 28 U.S.C. §§ 2254(b) and (c). To satisfy the exhaustion
> requirement with respect to a claim, a defendant must "fairly present[ ]" that
> claim to the state courts so that the court has "a fair opportunity to consider
> the ... claim and to correct that asserted *constitutional defect* in respondent's
> conviction." *Picard*, 404 U.S. at 275, 276, 92 S.Ct. at 512, 513. A petitioner
> has "fairly presented" his claim only if he has "informed the state court of
> both the factual and the legal premises of the claim he asserts in federal
> court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d
> Cir.1982) (*en banc*). To have done so, the petitioner "must have set forth in
> state court all of the essential factual allegations asserted in his federal
> petition; if material factual allegations were omitted, the state court has not
> had a fair opportunity to rule on the claim." *Id*.
>
> A petitioner may satisfy the exhaustion requirement by presenting his
> federal claim in a *pro se* supplemental brief, even if he has an attorney. *See*
> *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir.1992). Moreover, *pro se*
> pleadings are held to a less stringent standard than briefs by counsel, and
> are read generously, "however inartfully pleaded." *Haines v. Kerner*, 404
> U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); *see*
> *also Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir.1996).

*Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).

The first issue presented here is whether Petitioner exhausted *any* federal constitutional claim here, where, in his supplemental *pro se* appeal brief he referenced the Fifth, Sixth and Fourteenth Amendments in the heading of his brief, but did not discuss them, and, instead, discussed only an alleged violation of New York State law.  If so, the second issue is whether he exhausted all of the claims now being raised in this action. The final issue is whether any exhausted claims have merit.

The Court answers the first question in the affirmative, since Petitioner's *pro se* appellate brief at least included a "minimal reference" to constitutional claims under the Fifth, Sixth and Fourteenth Amendments. *See, Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001) ("Davis raised only one argument on his direct appeal to the Appellate Division. The point heading in his brief, printed in bold, read: 'THE COURT'S REFUSAL TO CHARGE JUSTIFICATION ... DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL. U.S. CONST., AMEND. XIV; N.Y. CONST., ART. 1, § 6.' We have held that if a petitioner cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court. *See Jones v. Vacco*, 126 F.3d 408, 413–14 (2d Cir.1997) (citing a specific constitutional provision alerts state courts to the nature of the claim); *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir.1992) (even a minimal reference to the Fourteenth Amendment presents federal constitutional claim to state courts and satisfies exhaustion requirement). We therefore reject the State's argument that Davis's constitutional claim was not fairly presented.").

However, the Court also finds that Petitioner did not thereby exhaust all of the issues that he is now attempting to assert under his "mandatory jury note procedures" claim.  Specifically, Petitioner did not exhaust the claim that he was excluded from the

courtroom while the trial court was addressing the jury's notes.  In that regard, Petitioner's appellate brief merely asserted that the record was unclear as to who was in the courtroom when the trial court was addressing court exhibits 13 and 14:  "The court does not make a record of who is present.  . . .  Moreover, the record goes silent as to the parties present, Mr. Maltese specifically with counsel."[22]  Notably, Petitioner did not claim that he had been excluded from the courtroom, which one would reasonably have expected him to do if he had in fact been excluded.  Now, however, Petitioner embellishes that earlier claim with an additional detail, namely, that he was excluded from the courtroom while the trial court was dealing with court exhibits 13 and 14: "In fact, Mr. Maltese was in the holding cell while his counsel was running back and forth telling the client what was occurring in the court room with the jury."[23]   The Court finds that the omission of this key factual allegation from the state court appeal means that Petitioner did *not* exhaust the "exclusion from the courtroom" aspect of his federal claim now before the Court.   Additionally, the Court agrees with respondent that this claim is now procedurally defaulted,[24] and that no exception applies.[25] Consequently, the Court does

---

[22] SR 176–177.

[23] ECF No. 1 at p. 24.

[24] *See, Jackson v. Conway*, 763 F.3d 115, 143 (2d Cir. 2014) ("Jackson has no further state avenues in which to press this issue because he has completed his direct appeal and the nature of the claim is apparent from the face of the record, meaning that he would be barred from raising it in a motion to vacate the judgment. *See* N.Y.Crim. Proc. Law § 440.10(2)(c) (stating that the court "must deny" a § 440.10 motion when sufficient facts appear on the record to permit appellate review of the claim and the defendant unjustifiably failed to raise that issue on direct appeal).") (other citation omitted).  Here, Petitioner contends that the claim is apparent from the face of the record since the trial transcript does not expressly indicate that he was present during the handling of the jury notes.

[25] *See, Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citations and internal quotation marks omitted), *quoted in DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006).

not consider this newly-asserted "right to be present" aspect of Petitioner's "mandatory jury note procedures" habeas claim.[26]

As for the remaining aspects of Petitioner's "mandatory jury note procedures" claim, Petitioner contends that his rights under the Fifth, Sixth and Fourteenth Amendments were violated because: 1) the court did not give counsel an opportunity to suggest appropriate responses to the notes; 2) the court did not specifically indicate "what portions" of Kimberly Blue's testimony were to be read back; 3) the court brought the jury back into the courtroom without announcing "jury in"; 4) the juror who asked to call her

_____

[26] The Court believes, in any event, that the "right to be present" due process claim lacks merit since nothing of consequence happened while Petitioner claims to have been excluded from the courtroom and he has not shown any prejudice. *See, United States v. Jones*, 381 F.3d 114, 121–22 (2d Cir. 2004) ("A defendant's constitutional right to be present during certain stages of criminal proceedings is rooted in the Confrontation Clause of the Sixth Amendment and in the Due Process Clause. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam). The Due Process Clause applies in lieu of the Sixth Amendment in situations where the defendant is not specifically confronting witnesses or evidence against him. *Id.* It requires a criminal defendant's presence "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (Cardozo, J.); *United States v. Rosario*, 111 F.3d 293, 298 (2d Cir.1997)."); *see also, Brown v. Conway*, No. 05CV0839, 2009 WL 604906, at *4 (W.D.N.Y. Mar. 9, 2009) ("A defendant has no right to be present, however, 'where the proceeding at issue involves only questions of law or procedure,' *People v. Rodriguez*, 85 N.Y.2d 586, 591, 627 N.Y.S.2d 292, 650 N.E.2d 1293 (1995), because in such proceedings, the defendant has no "peculiar factual knowledge" that would allow him to make a material contribution, *People v. Dickerson*, 87 N.Y.2d 914, 915, 640 N.Y.S.2d 865, 663 N.E.2d 906 (1996); *see Snyder*, 291 U.S. at 106–07 (noting that defendant has no right to be present where his "presence would be useless, or the benefit but a shadow"). The Second Circuit has held that a defendant's right to be present at trial is not violated when the defendant is absent when exhibits previously received in evidence are displayed to the jury, *Monroe v. Kuhlman*, 433 F.3d 236, 246–47 (2d Cir. 2006), or when a transcript of testimony is sent to the jury room during deliberations, *United States v. Schor*, 418 F.2d 26, 31 (2d Cir.1969). Indeed, that Court has also held that a defendant has no due process right to be present during the charge conference at which the substance of the instructions to be given to the jury is discussed and decided. *United States v. Rivera*, 22 F.3d 430, 438–39 (2d Cir.1994). Thus, in *Salley v. Graham*, 2008 WL 818691, at *4 (S.D.N.Y. 2008), the Court held that the petitioner's absence when the Court responded to notes from the jury was not of constitutional dimension. Similarly, in *Yonamine v. Artuz*, 2000 WL 1593300, at *1 (2d. Cir. 2000), the defendant argued that his due process rights were violated because he was not present at the exchange concerning the jury note between the trial judge and his attorney. The Court held that there is no clearly established Federal law, as determined by the Supreme Court of the United States, that guarantees a defendant the right of presence at a chambers conference between the trial judge and counsel at which legal issues are discussed."); *Harrell v. Miller*, No. 21 CIV. 6714 (AKH), 2022 WL 375289, at *9 (S.D.N.Y. Feb. 8, 2022) ("[T]he record shows that Petitioner was made aware of all that had been discussed before he came to court, that he had ample opportunity to discuss all relevant issues with his counsel, and that he was present when the testimony was read back to the jury. Petitioner makes no showing that any decision of the U.S. Supreme Court required more.").

husband was allowed to do so, even though the record does not indicate who authorized the call or what the purpose of the call was; and 5) the trial transcript does not indicate exactly who was present in the courtroom when the jury notes were being addressed.[27]

The state appellate court denied this claim on the merits, though without discussion, thereby signaling its finding that the aforementioned circumstances did not violate Petitioner's rights under the Fifth, Sixth or Fourteenth Amendments.  In that regard, as the Second Circuit has advised,

> [w]e are required to defer to a state court's adjudication of an issue on the merits, unless the state court's decision is "contrary to, or involve[s] an unreasonable application of, clearly established Federal law ... [or is] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's ... claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer ... to the state court's decision." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001)) (quoting 28 U.S.C. § 2254(d)(1)) (alteration in the original). A summary disposition constitutes a disposition "on the merits." *Harrington v. Richter*, ––– U.S. –––––, 131 S.Ct. 770, 784–85, 178 L.Ed.2d 624 (2011).
>
> AEDPA unquestionably requires deference to a state court's "summary disposition" of an appeal. *See id*. at 784. ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). Where, as here, a state appellate court decides an issue of federal law in a summary fashion, we exercise AEDPA deference by asking, first, "what arguments or theories ... could have supported" the decision of the

---

[27] This last assertion fails to establish Petitioner's right to habeas relief. *See, Sookoo v. Heath*, No. 09 CIV 9820 JGK, 2011 WL 6188729, at *8 (S.D.N.Y. Dec. 12, 2011) ("Under federal law, the defendant has the constitutional right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings, and a habeas petitioner has the burden of demonstrating his claim that proceedings occurred in his absence by a preponderance of the evidence.  The mere failure to note the presence of the defendant in the transcript has been deemed insufficient to meet this burden.") (collecting cases, internal quotation marks and citations omitted).

state court, and second, "whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 131 S.Ct. at 786.

*Hawthorne v. Schneiderman*, 695 F.3d 192, 196 (2d Cir. 2012).

Respondent here maintains that whatever reason the state appellate court had to deny that aspect of Petitioner's appeal cannot have been contrary to clearly established federal law pertaining to the handling of jury notes, since there is no such federal law,[28] and that any error was harmless.

Respondent is correct that the type of non-structural constitutional errors alleged in this claim, involving procedures utilized in responding to jury notes asking for a read back of a witness's testimony and for a juror to call her husband, are subject to a harmless error analysis. *See*, *Silva v. Capra*, No. 15CV09032GHWSN, 2016 WL 5793977, at *9 (S.D.N.Y. Aug. 30, 2016) ("[E]ven assuming arguendo that Silva has a Sixth Amendment right to have counsel apprised of and given an opportunity to respond to every jury note, any violation of this right is subject to harmless error review. *See United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994) ("noncompliance with [the Second Circuit's] procedure [for responding to jury notes] does not mandate reversal unless prejudice is shown"); *United States v. Schor*, 418 F.2d 26, 30 (2d Cir. 1969) (holding that any violation of the defendant's right to be informed of the contents of a jury note is subject to harmless error review) (footnote omitted), report and recommendation adopted, No. 1:15-CV-9032-

---

[28] In that regard, *see, e.g.*, *Hernandez v. Miller*, No. 03 CIV. 7614 (DLC), 2005 WL 2086358, at *4 (S.D.N.Y. Aug. 30, 2005) ("In determining that the trial court not only 'meaningfully responded to the jury's note' but also 'reasonably interpreted' it such that no clarification was necessary, the Appellate Division did not engage in an 'unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1). Rather, as the Report observed, there is no clearly established Supreme Court precedent governing either a trial court's interpretation of jury notes or a trial court's decision to read back testimony to a jury.").

GHW, 2016 WL 5719797 (S.D.N.Y. Sept. 29, 2016); *see also, Feliciano v. Lee*, No. 1:18-CV-9591-GHW, 2020 WL 5076865, at *11 (S.D.N.Y. Aug. 26, 2020) ("Feliciano has also failed to show that he was prejudiced by the trial court's failure to reconvene the parties in response to Jury Note #12. '[A]ny violation of' a defendant's 'Sixth Amendment right to have counsel apprised of and given an opportunity to respond to every jury note'— assuming a defendant has such a right—'is subject to harmless error review.' *Silva*, 2016 WL 5793977, at *9 (citing *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994); *United States v. Schor*, 418 F.2d 26, 30 (2d Cir. 1969)). Even if the trial court erred by not reconvening the parties and permitting Feliciano's counsel to respond to the jury's request for an exhibit, any such error was harmless. *See United States v. Ballistrea*, 101 F.3d 827, 837 (2d Cir. 1996) (holding that an error in failing to follow the correct procedures for a jury note "largely concerned administrative matters" and was therefore harmless). Thus, Feliciano is not entitled to habeas relief on this ground.").

The Court here agrees that the Appellate Division likely found that to the extent there was any error at all by the trial court, it was harmless, and concludes that such a finding would not have been contrary to clearly established federal law. In this regard, Petitioner contends, for example, that the trial court erred by not expressly indicating which portions of Kimberly Blue's testimony was read back to the jury, and that the error was prejudicial since it is unclear whether the portion read back to the jury included Blue's testimony that the robber resembled someone other than Petitioner. Petitioner also maintains that the note asking if a juror could call her husband should have been investigated further by the trial court, and that the error was prejudicial since the jury returned its verdict shortly after the call was made. However, these arguments by Petitioner are completely speculative and implausible insofar as they assume either that

the aforementioned portion of Kimberly Blue's testimony was somehow *not* read back to the jury along with the rest of her testimony,[29] or that the juror's phone call to her husband had anything to do with the jury's verdict.  Such rank speculation completely fails to establish any possible prejudice, particularly considering the overwhelming evidence of Petitioner's guilt that was introduced at trial.  Overall, Petitioner's arguments on this point lack merit and are denied.

The Jury Instruction Claims

Petitioner next alleges that Judge Noonan erred by giving a faulty jury instruction on voluntariness of confessions and by failing to give an "adverse inference" instruction, concerning voluntariness, based on Welker's failure to videotape the confession.

Respondent contends that the "faulty jury instruction claim" is procedurally barred since the state appellate court denied it on adequate and independent state-law grounds. As for the "adverse inference" instruction claim, Respondent maintains that the state appellate court's denial of the claim on the merits was not contrary to clearly-established federal law.  Once again, the Court agrees with Respondent.

First, Petitioner's claim regarding the jury instruction given by Judge Noonan is barred by the procedural default doctrine.  In that regard, attorney Pilato did not object to any aspect of the jury charge that was given.  For that reason, the state appellate court ruled that the objection was not preserved for appellate review. *People v. Maltese*, 148 A.D.3d at 1782.

As noted earlier, where, as in this instance, "the state court rejects a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the

---

[29] Petitioner does not assert that such portion of Blue's testimony was actually omitted.

claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)." *Jackson v. Conway*, 763 F.3d at 132.   One such state procedural ground is New York's contemporaneous objection rule:

> "In all cases in which a state petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
>
> \*\*\*
>
> New York's contemporaneous objection rule [(N.Y. Crim. P. Law § 470.05(2))] "require[s] at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).
>
> \*\*\*
>
> New York's contemporaneous objection rule is an independent and adequate state procedural rule. "[T]here is no question that the claimed procedural bar," the failure to comply with New York's contemporaneous objection rule, "constitutes an 'independent' state ground of decision." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). Moreover, "in accordance with New York case law, application of the state's preservation rule is adequate—*i.e.*, firmly established and regularly followed." *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007).

*Hamilton v. Lee*, 707 F. App'x 12, 13–14 (2d Cir. 2017); *see also, McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at \*2 (2d Cir. Sept. 29, 2021) ("An adequate and independent finding of procedural default will bar federal habeas review of the underlying claim.  . . .  The New York courts' application of their rules regarding the preservation of legal issues for appellate review in criminal cases—codified at N.Y. Crim. Proc. Law § 470.05[2]—constitute independent and adequate state grounds for their rejection of [the

petitioner's claim].") (citations and internal quotation marks omitted), *cert. denied*, 142 S. Ct. 1235 (2022).

Notably, the procedural bar for habeas claims denied by a state court on an adequate and independent state procedural ground applies where, as here, the state court also denied the claim on the merits in the alternative. *See, e.g., Whitlock v. LaValley*, No. 13 CV 5772 (RJD), 2019 WL 3754415, at *2 (E.D.N.Y. Aug. 8, 2019) ("Importantly, the bar applies 'even where the state court has also ruled in the alternative on the merits of the federal claim,' which is often the case. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). *See also Harris v. Reed*, 489 U.S. 255, 264 n. 10, (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding") (emphasis in original).").

Here, the claim concerning the jury instruction on voluntariness was denied by the state court on an adequate and independent state procedural ground.  Petitioner admits this, but contends that the claim is not barred since an exception applies, either based on cause and prejudice or actual innocence.  With regard to cause and prejudice, Petitioner alleges that his appellate attorney provided ineffective assistance of counsel.[30]  However, Petitioner cannot demonstrate either cause for the procedural default or prejudice arising from his appellate attorney's performance, since his appellate attorney had nothing to do with trial counsel's failure to object to the jury instruction.  Nor, in any event, could Petitioner here rely on ineffective assistance of counsel to establish cause for a procedural default, since he never raised ineffective assistance of counsel as an

---

[30] ECF No. 1-2 at pp. 9–10.  (Petitioner specifically indicates that trial counsel was not ineffective, stating that it "can hardly be the fault of counsel at trial to catch a bias[ed] judge when he changes one word in a[n] instruction.").

independent claim before the state courts.[31]   Furthermore, Petitioner has clearly not shown, under the relevant standard, that he is "actually innocent" of any of the crimes for which he was convicted.   Accordingly, the claim involving the instruction on voluntariness is denied as procedurally barred.

Petitioner also alleges that Judge Noonan erred and violated his federal constitutional rights by failing to give an "adverse inference" instruction, concerning voluntariness, based on Welker's failure to videotape the confession.   Petitioner contends that such an instruction should have been given since recording of his confession was required by both New York State law and "due process."[32]

The state appellate court denied this claim on the merits, citing the New York Court of Appeals' decision in *People v. Durant*, 26 N.Y.3d 341 (2015), which held that the common law does not require a criminal trial court to issue an adverse inference instruction against the People at trial based solely on the police's failure to electronically record the custodial interrogation of a defendant. *See, id.* at 344 ("[A]lthough the better practice would be for the police to use the equipment at their disposal to record interrogations, their failure to take such action does not, as a matter of law, automatically compel a trial court to deliver an adverse inference charge to a deliberating jury."); *see also, id.* at 349 ("[O]ur case law has not recognized a constitutional duty to record

---

[31] *See, DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006) ("We also reject DiSimone's argument that it was ineffective assistance of appellate counsel not to raise the insufficiency challenge in state court. The Supreme Court has held that ineffective assistance of appellate counsel claims cannot constitute "cause" for procedural default unless first presented in state court as an independent constitutional claim. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Sweet v. Bennett*, 353 F.3d 135, 141 n. 7 (2d Cir. 2003). In New York, this can be done by petitioning for a writ of coram nobis, *see Sweet*, 353 F.3d at 141 n. 7; *People v. Bachert*, 69 N.Y.2d 593, 598-99, 509 N.E.2d 318, 321–22, 516 N.Y.S.2d 623, 626-27 (N.Y.1987), which DiSimone has not done."); *see also, Pena v. Bell*, No. 1:18-CV-4849-ALC, 2021 WL 517778, at *6 (S.D.N.Y. Feb. 11, 2021) ("[I]t is well-established that in order for a habeas petitioner to claim ineffective assistance of counsel as "cause" for his default he must have raised and exhausted it as a separate claim in state court.").

[32] ECF No. 1 at p. 30.

interrogations.  Thus, while our precedent does permit—and sometimes requires—a court to issue an adverse inference instruction as a penalty for the government's failure to satisfy applicable legal duties, the rationale of that precedent does not support the issuance of an adverse inference instruction based on the police's failure to satisfy a nonexistent duty to record an interrogation.") (citations omitted).

Petitioner, though, has not attempted to show that the state court's ruling was contrary to any particular clearly-established federal law.  Nor does the Court find that the ruling was contrary to any such law.

In this regard, Petitioner maintains he was entitled to an adverse inference instruction not because the police failed to preserve evidence, but because they failed to create evidence by not videotaping the interview when they had the ability to do so. Notably, though, the decision not to videotape the interview was made prior to the commencement of the interview, when Welker did not know what Petitioner was going to say.  Moreover, Petitioner has not denied actually making the inculpatory statements attributed to him by Welker.  Nor, as already discussed, is there any evidence to suggest that Petitioner's statement was involuntary.  Accordingly, this is not a situation in which the police destroyed evidence that was potentially harmful to the prosecution's case against Petitioner.  Instead, this is a situation where the police elected not to videotape what turned out to be a full confession by Petitioner that presumably would have been extremely helpful to the prosecution's case.   Moreover, the evidence indicates that Welker's motive for not videotaping the interview was simply that he already knew Petitioner would refuse to speak if he was being recorded.

In sum, Petitioner has shown neither that Welker failed to videotape the interview in bad faith under circumstances suggesting that the recording was likely going to be

helpful to Petitioner's defense, or that a recording of the interview actually would have been helpful to the defense.

Consequently, even if the Court viewed this as a situation involving the failure to preserve evidence, the failure to videotape the interview did not violate Petitioner's constitutional rights. *See, California v. Trombetta*, 467 U.S. 479, 488–89, 104 S. Ct. 2528, 2534, 81 L. Ed. 2d 413 (1984) ("California's policy of not preserving breath samples is without constitutional defect. Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.   To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.") (citation and footnote omitted); *see also, United States v. Greenberg*, 835 F.3d 295, 303 (2d Cir. 2016) ("[W]hen the Government has . . . failed to preserve evidentiary material that is 'potentially useful,' such failure does not violate due process unless a criminal defendant can show bad faith on the part of the Government.")

Moreover, federal law does not entitle a criminal defendant to an adverse-inference jury charge even where police have mistakenly destroyed evidence. *See, Magassouba v. United States*, No. 03 CR 985 RPP, 2013 WL 5780767, at *5 (S.D.N.Y. Oct. 25, 2013) ("Neither the Supreme Court nor the Second Circuit has ever held that a defendant is entitled to an adverse-inference jury instruction when the Government has produced evidence showing that a controlled substance has been destroyed by mistake prior to trial.").

Additionally, the denial of the requested adverse-inference instruction did not render the trial unfair, since although Judge Noonan declined to give the instruction, Petitioner was nevertheless able to argue to the jury that it should draw an adverse inference, concerning the voluntariness of the confession, from the failure to videotape the interview. *See, e.g., Romero v. Runnels*, No. CIVS040459MCECMKP, 2009 WL 1451713, at *15 (E.D. Cal. May 22, 2009) ("[P]etitioner's case was not rendered unfair as a result of failure to give [an adverse inference jury instruction.]  In essence, the officer's inconsistent testimony regarding the fingerprints suggests potentially sloppy police work, an argument which petitioner was free to make in his defense. Thus, even though the jury was not specifically instructed that it could draw an adverse inference, defendant could have argued that the prosecution's case was undermined by sloppy police work."). Indeed, that was the central theme of the defense case.[33]

For these various reasons the claim involving the adverse-inference jury charge is denied.

<u>The Claim Involving Jailhouse Informant Steven Crandall is Procedurally Barred</u>

Ground Ten of the Petition alleges prosecutorial misconduct, in which Friedman used jailhouse-snitch Crandall to spy on Petitioner while in jail, thereby denying Petitioner his right to counsel.  Petitioner further contends that this plot involved Assistant Genesee County Public Defender William Tedford, who had represented both Petitioner and Crandall prior to Petitioner retaining Pilato, as well as Judge Noonan.  In this regard, the claim is based on the same type of implausible and unsubstantiated allegations made in connection with Grounds Six, Seven, Eight, Nine and Eleven.

---

[33] *See, e.g.*, Defense Closing Argument, Trial Tr. at pp. 522–537.

In any event, as Respondent argues, Judge Mohun denied this aspect of Petitioner's Section 440.10 motion on adequate and independent state-law procedural grounds, namely New York Criminal Procedure Law § § 440.10(2)(c) and 440.10(3)(a),[34] which indicate, respectively, that the court may deny a § 440.10 motion either where the facts on which the claim is based appear in the record and defendant unjustifiably failed to raise the issue in his direct appeal, or the facts could have been made to appear in the record with due diligence but the defendant failed to do so and the matter was not raised on appeal. *See, e.g., Ward v. Lee*, No. 19-CV-03986 (KAM), 2020 WL 6784195, at *6 (E.D.N.Y. Nov. 18, 2020) ("[T]he Second Circuit has specifically held that a state court's reliance on C.P.L. § 440.10(2)(c) constitutes an adequate and independent state ground that precludes federal habeas review.") (citations omitted); *see also*, *Camarano v. Griffin*, No. 16CV2095, 2021 WL 1163712, at *5 (S.D.N.Y. Mar. 25, 2021) ("Because courts in this District have recognized § 440.10(3)(a) as an adequate and independent state ground, federal habeas review of Camarano's claim is barred.") (citations omitted).

Respondent further contends that Petitioner has not shown cause and prejudice relating to the procedural default or actual innocence, and, again, the Court agrees. On this point, Petitioner again attempts to argue ineffective assistance of appellate counsel as establishing cause.[35]   However, as discussed earlier, Petitioner cannot rely on ineffective assistance of counsel to establish cause for a procedural default, since he never raised ineffective assistance of counsel as an independent claim before the state

---

[34] See, ECF No. 1-1 at p. 16 ("[G]iven that the witness's testimony is a matter of record, nothing prevented the defendant from raising this claim in his direct appeal, and yet it appears he unjustifiably neglected to do so.  In addition . . . it is evident that the defendant could, with due diligence, have made [the factual basis of the claim] appear in the record so as to have allowed adequate review of the issue upon his direct appeal. He did not do so, and therefore the Court determines that the claim shall be denied pursuant to CPL § 440.10(2)(c), or in the alternative pursuant to CPL § 440.10(3)(a).").

[35] ECF No. 1-2 at pp. 15–16.

courts.  Additionally, the Court does not believe, based on the record before it, that any such claim for ineffective assistance of appellate counsel would have merit in any event. Nor can Petitioner establish "actual innocence" under the relevant standard.  Accordingly, Petitioner's "Ground Ten" claim is denied as procedurally barred.

<u>The Sufficiency-of-the-Evidence Claim is Procedurally Barred</u>

Grounds Four and Five of the Petition allege that Petitioner's convictions were unconstitutionally obtained because they were not supported by sufficient evidence. Again, though, Respondent contends that this claim is procedurally barred since it was denied in state court based on an adequate and independent state procedural ground, namely, CPL § 470.05(2), after Petitioner failed at trial to preserve the issue by making only a general motion for a trial order of dismissal.[36]  Respondent alternatively maintains that the claim lacks merit.

Respondent is correct that the state appellate court's denial of the claim on that basis is an adequate and independent state law ground that bars federal habeas review:

Generally, the rule [CPL § 470.05(2)] provides that "New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011); *see also People v. Hawkins*, 11 N.Y.3d 484, 492, 900 N.E.2d 946, 872 N.Y.S.2d 395 (2008) ("*To preserve for this Court's review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged ... general motions simply do not create questions of law for this Court's review*" (citations omitted)). The contemporaneous objection rule in New York "is considered a firmly established and regularly followed rule sufficient to invoke the 'independent and adequate state law ground' bar" to

---

[36] *See, People v. Maltese*, 148 A.D.3d at 1781 ("By making only a general motion for a trial order of dismissal, defendant failed to preserve for your review his contention . . . that the evidence is legally insufficient to support the conviction.").

> federal habeas review. *Nowakowski*, 2018 WL 6421056, at *6 (*quoting
> Richardson v. Greene*, 497 F.3d 212, 217-18 (2d Cir. 2007)).

*McPherson v. Keyser*, No. 15-CV-1250 (SJF), 2019 WL 6050279, at *5 (E.D.N.Y. Nov.

15, 2019) (emphasis added), *aff'd*, No. 20-161-PR, 2021 WL 4452078 (2d Cir. Sept. 29,

2021).

Petitioner argues otherwise and offers various reasons why the claim should not

be procedurally barred.  For example, Petitioner seems to assert that the procedural bar

does not apply since, after the Appellate Division ruled that the claim was not preserved,

it alternatively noted that the claim also lacked merit.  However, as discussed earlier, that

argument has no merit.  Petitioner alternatively asserts that a "legally insufficient evidence

[claim] does not have to be preserved,"[37] but that too is incorrect, as already shown.

Finally, Petitioner asserts that the procedural bar should not apply since the state

appellate court denied his "weight of the evidence claim" on the merits, which necessarily

amounted to a finding that the convictions were supported by sufficient evidence.[38]  As

support for this argument, Petitioner cites *Parker v. Ercole*, 666 F.3d 830 (2d Cir. 2012).

However, Petitioner has misunderstood the significance of that decision, since the court

in *Parker v. Ercole* held that the defendant's sufficiency-of-the evidence habeas claim

was procedurally barred, due to his failure to preserve the issue, notwithstanding the fact

that the state appellate court had considered his alternative weight-of-the-evidence claim.

*See, Parker v. Ercole*, 666 F.3d at 834 ("It is undisputed that Parker failed to preserve his

claim that the evidence proving his guilt of depraved-indifference murder was insufficient

---

[37] ECF No. 1-2 at p. 11.
[38] The argument makes no logical sense since, as just noted, the state appellate court also alternatively denied the sufficiency-of-the-evidence claim on the merits, so there is no need to consider how that court decided the related weight-of-the-evidence claim.

to support the jury's verdict. We therefore do not independently review Parker's sufficiency claim because it is procedurally barred. ").[39]  The *Parker v. Ercole* decision, therefore, does not support Petitioner's argument.  In sum, none of Petitioner's arguments in favor of excusing the procedural default have merit, and the claim is therefore denied as procedurally barred.   Alternatively, the Court agrees with Respondent that the sufficiency-of-the-evidence claim lacks merit in any event, since there was overwhelming evidence of Petitioner's guilt.

<u>The Claim Involving Petitioner's Medical Records</u>

Petitioner also contends that he was denied the opportunity to present a defense, in violation of his rights under the Fifth, Sixth, Eighth and/or Fourteenth Amendments, when Judge Noonan ruled that office records from Petitioner's doctor were not admissible as certified hospital records.[40]  In that regard, Petitioner, who did not testify at trial or put on any witnesses, sought to admit the certified office-treatment records, without any foundational witness, to show that he was addicted to prescription pain-killers, to support the inference that he was experiencing withdrawal when he gave his confession, thereby rendering the confession involuntary.   Defense counsel offered that the records were

---

[39] The court in *Parker v. Ercole* then went on to consider whether the defendant had shown that his trial counsel had been ineffective in failing to preserve the sufficiency of the evidence claim, and ultimately found that he had not, since he could not prove prejudice under the *Strickland* standard.  In making that determination, the court found that there had been sufficient evidence to support the conviction, as shown by the state court's denial of the defendant's weight-of-the-evidence claim. *See, id.* at 834–835 ("[T]o satisfy the second prong of the *Strickland* test, Parker must show that, but for his counsel's failure to preserve his sufficiency claim, there is a reasonable probability that the claim would have been considered on appeal and, as a result, his conviction would have been reversed. Parker cannot make this showing, however, because the Appellate Division did, implicitly, address this claim, even though it had not been preserved at trial. *See Bierenbaum v. Graham*, 607 F.3d 36, 57 (2d Cir. 2010) (holding that, where Appellate Division reviewed insufficiency claim despite it being unpreserved, petitioner could not claim that his counsel was ineffective in failing to preserve the issue for appeal). As explained above, the Appellate Division addressed on the merits Parker's claim that his conviction was against the weight of the evidence, and this review necessarily subsumed review of his sufficiency claim.").

[40] Defense counsel did not explain why the records should be admitted, except to say that he felt they were admissible "under the Criminal Procedure Law." Trial Tr. at p. 501.

admissible, "without anyone testifying," "under the Criminal Procedure Law,"[41] but the Prosecutor stated that pursuant to CPLR § 4518(c), he did not think the records were admissible on that basis since they were not hospital records.[42]  After researching the issue of "certification requirements," Judge Noonan ruled that the records were not admissible. *See*, Trial Tr. at p. 504 ("Mr. Friedman is correct, doctor's office records are not permissible with a certification under 4518(c).  So, even with the proper certification, those are not going to be admitted.").  Defense counsel did not offer any other basis for admission of the records.  The state appellate court denied the claim on appeal, though without specifically discussing it. *See, People v. Maltese*, 148 A.D.3d at 1783 ("We have reviewed defendant's remaining contentions in is *pro se* supplemental brief and conclude that none requires modification or reversal of the judgment.").

Petitioner now frames the issue as being that he was "denied the right to present a defense," asserting that Judge Noonan "intentionally made an incorrect legal ruling so that he could deny [Petitioner] a complete defense[.]"[43]  In that regard, Petitioner baldly asserts that the records were admissible under CPLR § 4518(a), an argument he never made to Judge Noonan.

---

[41] Defense counsel also admitted that he had only faxed certification pages that were not attached to the records that they were purportedly certifying.

[42] Trial Tr. at pp. 501–502.

[43] Petitioner's bald assertion that Judge Noonan intentionally ruled incorrectly that the medical records were inadmissible, in order to deny him a defense, is entitled to no weight.  Indeed, while Petitioner's papers are rife with unsupported allegations that all of the players involved in his prosecution were corrupt and conspired against him, he offers no compelling or even plausible explanation for why any one of them would have had such animus toward him.

Respondent contends that the medical records were not admissible under CPLR § 4518(c) and that the state appellate court therefore properly denied the issue on appeal. Respondent further contends that the ruling did not result in an unfair trial and that the state courts' rulings were not contrary to clearly established federal law.  Once again, the Court agrees with Respondent.

The legal principle upon which Petitioner relies to bring this claim is clear:

A criminal defendant has "a fundamental due process right to present a defense." *United States v. Mi Sun Cho*, 713 F.3d 716, 721 (2d Cir.2013). However, this right "is not absolute, for a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability," *id*. (internal quotation marks omitted), "and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir.1993) (internal quotation marks omitted). The erroneous exclusion of evidence violates a defendant's federal constitutional right to present a defense only if "the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir.2000) (brackets and internal quotation marks omitted).

*United States v. Platt*, 608 F. App'x 22, 28–29 (2d Cir. 2015).

Here, to begin with, Petitioner has not even shown that the state courts' rulings concerning the medical records were erroneous.  That is, he has not shown that the medical-office records were admissible without a foundational witness as certified business or hospital records. *See, Bronstein-Becher v. Becher*, 25 A.D.3d 796, 797, 809 N.Y.S.2d 140, 142 (2d Dept. 2006) ("Here, Dr. Stephens' two "narrative reports" were simply letters summarizing his diagnosis, treatment, and opinion concerning the father's ability to return to work. No proper foundation was provided demonstrating that they were in fact business records (see CPLR 4518[a] ). *Their certification did not cure this defect as only hospital records, and not physician office records, are admissible by certification*

(see CPLR 4518 [c]; 2306[a]; *Matter of Damon J.*, 144 A.D.2d 467, 534 N.Y.S.2d 23).")
(emphasis added).

Beyond that, even assuming that Judge Noonan's ruling was incorrect, it did not thereby deny Petitioner a defense (challenging the voluntariness of the confession), for the simple reason that it was already conceded by the Prosecution that Petitioner was a long-time user of narcotic pain medications and crack cocaine.   Indeed, Investigator Welker, who had been friends with Petitioner for over twenty years, testified to that fact.[44] Specifically, Welker testified that Petitioner had been a long-time user of narcotic pain medications for back injuries he sustained in motor vehicle accidents.[45]   Moreover, the confession itself indicated that Petitioner committed the crimes to get money to support his crack cocaine addiction.  Petitioner has not attempted to show that his doctor's records would have proven anything more.   Consequently, the records would have been merely duplicative and, moreover, would not have been probative on the central issue, which was whether at the time of his confession Petitioner's will was overborn because he was experiencing withdrawal.[46]  Consequently, the excluded evidence would not have created a reasonable doubt that did not otherwise exist.    This aspect of the habeas petition is therefore denied.

---

[44] Trial Tr. at pp. 387–388.
[45] Trial Tr.at pp. 387–388.
[46] Indeed, when the discussion concerning the admissibility of the records was taking place, Petitioner's counsel indicated that he was not even sure yet whether he wanted to have the records admitted, so the argument now being raised that the records were essential to Petitioner's defense is quite dubious. Trial Tr. at p. 500.

<u>Insofar as the Petition is Attempting to Assert Stand-Alone Claims for Ineffective
Assistance of Counsel They are Unexhausted and Lack Merit</u>

The Petition purports to assert eleven separate "grounds," none of which are captioned as asserting a claim for ineffective assistance of counsel. Nevertheless, the Petition contains several references to ineffective assistance of counsel. For example, in Grounds Two and Four, respectively, Petitioner asserts that Pilato provided ineffective assistance by failing to file a more-thorough motion to dismiss the charges based on lack of probable cause to arrest, lack of "forensic evidence" and inconsistent descriptions given by the robbery victims. And, in Ground Ten, Petitioner remarks that Pilato provided ineffective assistance by not cross-examining Crandall in a manner that would have revealed the alleged plot by the prosecution to use Crandall to spy on Petitioner in jail.

However, as discussed earlier in connection with Petitioner's procedurally defaulted claims, he never exhausted any claim for ineffective assistance of counsel.

> Section 2254(b)(1)(A) of 28 U.S.C. requires habeas petitioners to first exhaust their state-court remedies with respect to each of the grounds raised in a petition. A district court may not adjudicate a 'mixed petition,' consisting of both exhausted and unexhausted claims, except that it may deny the entire petition on the merits. *See*, 28 U.S.C. § 2254(b)(2).

*Cole v. Noeth*, No. 21-CV-6300 CJS, 2021 WL 4973078, at *2 (W.D.N.Y. Oct. 26, 2021).

Claims for ineffective assistance of counsel are

> are covered by the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that (1) his attorney's performance was deficient and (2) the deficient performance prejudiced him. *Missouri v. Frye*, 566 U.S. 134, 140, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

*United States v. Galanis*, 759 F. App'x 88, 91 (2d Cir. 2019). Under the *Strickland* test, the petitioner

must initially show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." [*Strickland*, 466 U.S.] at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and citations omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 664. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Moreover, as the Second Circuit has recently noted, "[t]he prejudice inquiry is ... ineluctably tied to the strength of the prosecution's evidence." *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018).

*DeJesus v. Noeth*, No. 19-CV-1028 (BMC), 2019 WL 1459043, at *6 (E.D.N.Y. Apr. 2, 2019).

Here, even assuming that Petitioner's ineffective-assistance claims had been exhausted, they do not satisfy either prong of the *Strickland* analysis, but especially not the prejudice prong, considering the overwhelming strength of the prosecution's case. Consequently, to the extent Petitioner is attempting to assert unexhausted free-standing claims of ineffective assistance of counsel, they are also denied.

CONCLUSION

The application under 28 U.S.C. § 2254 is denied. Any remaining pending motions (*e.g.*, ECF Nos. 3, 7, 28 & 33) are also denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis*

should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  Finally, the Clerk of the Court is directed to close this case.

So Ordered.

Dated: Rochester, New York
June 8, 2022

ENTER:

CHARLES J. SIRAGUSA
United States District Judge